## John H. Wedig, Appellee, v. The Kroger Grocery and Baking Company, Appellant.

Opinion filed September 16, 1935. Rehearing denied October 21, 1935.

C. W. Burton, of Edwardsville, for appellant.

M. R. Sullivan, of Edwardsville, for appellee.

Per curiam.

John H. Wedig instituted this suit against the appellant, hereinafter referred to as the defendant, to re-

cover damages for injuries he sustained when his automobile collided with defendant's truck and trailer. Wedig recovered a judgment and pending appellant's appeal to this court, he died. Representatives of his estate petitioned to be substituted as plaintiff-appellee and appellant filed a plea alleging that by reason of the death of Wedig the suit abated. We sustained appellee's motion to strike the plea. 278 Ill. App. 378. For convenience, we will refer to appellee as plaintiff.

The negligence charged in the three counts of the declaration upon which the case was tried is that the defendant left a truck and trailer standing upon State Highway Route No. 3 without any light or other warning; that the defendant violated the statute prohibiting the driver of a vehicle from stopping on a State highway so that there is not ample room for two vehicles to pass; and, that the defendant violated the statute requiring each motor vehicle or trailer when upon any public highway to be lighted with one light which shall throw a red light visible in the reverse direction. The defendant pleaded the general issue. The jury returned a verdict for plaintiff for $15,000. Motions for a directed verdict made by the defendant at the close of plaintiff's evidence and at the close of all the evidence were overruled. Motions for a new trial and in arrest of judgment were likewise overruled. The court's rulings on these several motions are assigned as error.

Defendant contends that Wedig did not prove that he exercised due care for his own safety and that his negligence was such as to bar recovery.

The accident occurred about 2:30 a. m., February 11, 1933, on State Highway Route No. 3 on a bend or curve in the road near the Hackenthal farmhouse. The road at this point extends in a general northerly and southerly direction but the bend or curve was slightly to the west. The pavement at this point was of brick, 18 feet wide with the center line marked. There is a conflict

in the evidence as to the width of the earth shoulder on the east side of the pavement, plaintiff's witnesses fixing it at six to eight feet, while the truck driver fixes it at not over four feet.

Defendant's truck with a trailer attached loaded with merchandise, a total weight of 25,000 pounds, was traveling north. The driver of the truck testified that when he was about a mile south of the scene of the accident, the motor "sputtered" but did not stop. When he crossed canal bridge a half a mile from the scene of the collision, it missed fire again but the driver made no investigation. When near the place of the accident, the motor "sputtered" again and soon stopped. The truck and trailer rolled approximately 40 feet after the motor died and stopped on the pavement in the north-bound traffic lane. While it was standing in this position, plaintiff, driving a Dodge coupé, approached from the south and in undertaking to pass the trailer collided with the left rear corner. After the collision the coupé came to a stop in the field 16 to 18 feet west of the trailer, headed south. The front part of the coupé did not come in contact with the trailer, the force of the impact being about the center of the right side.

Plaintiff testified that when he crossed the canal bridge, approximately a half mile south of the scene of the accident, he was driving 40 to 45 miles per hour with his bright lights burning; that soon thereafter, he saw an automobile approaching from the north with bright lights and traveling at a high rate of speed; that he reduced his speed and when he was 200 to 300 feet south of where the collision occurred, and before he met the south-bound car, he switched his lights from bright to dim; that he passed the south-bound car 40 to 70 feet south of the scene of the accident and immediately thereafter turned his lights from dim to bright and then for the first time, he saw defendant's truck and trailer standing on the pavement 15 to 20 feet

ahead of him; that he immediately applied his brakes, turned his car to the left to pass the trailer but that he was so close the collision could not be avoided. He testified that just before and at the time of the collision, he was not traveling more than 20 to 23 miles per hour.

Defendant's evidence shows that the truck and trailer had been stopped on the pavement five to seven minutes when the collision occurred. The truck driver testified that when the truck stopped, he got out of the cab, examined the carburetor on the left side of the motor and found that there was gasoline in it; that he then went to a tool box on the right side of the cab to get some lights to put out as warning signals; that while he was removing the lights from the box, the collision occurred; that in going to plaintiff's car on the west side of the truck, he passed to the rear of the trailer and that the three colored lights at the top of the trailer and the tail light were lighted; that he did not at any time turn off the rear lights. He testified as to seeing plaintiff's car coming towards the trailer, that it had headlights burning and was traveling 45 to 50 miles per hour. Plaintiff testified that after his car came to a stop on the west side of the highway, he saw the truck driver climb out of the truck cab and that he told the driver to turn on his lights and that he went back to the cab and the lights both forward and rear immediately came on.

There is evidence in the record describing the color of the trailer as "dirty" and that it was about the same color as the highway; that it was a "gray" night and visibility was not good; that there was some snow and ice in the fields but none on the pavement.

The question of the care exercised by the plaintiff was one for the jury unless his conduct was so clearly and palpably negligent that all reasonable minds would agree that he did not exercise that degree of care and

caution that a reasonable, ordinary and prudent person would exercise under the same circumstances.

The statute which was in force at the time of the collision, section 16(e), par. 17, ch. 95a, Cahill's Statutes (section 17 E, ch. 95½, Smith-Hurd), provided that any person in charge of a motor vehicle when approaching another vehicle proceeding in an opposite direction, and when not less than 250 feet of the same, should dim, drop or extinguish his headlights. It appears that plaintiff's act in switching his lights from bright to dim when approaching the south-bound car was in compliance with that statutory requirement.

Defendant's contention that plaintiff's contributory negligence bars his action may be summarized under two heads, viz.: that it was negligence *per se* for plaintiff to drive his car at the speed he did at a time when his vision was obstructed by the bright lights of the south-bound car and, secondly, that he was negligent in not having his car under control so that he could stop within the range of his vision.

The evidence shows that under the atmospheric conditions as they existed at the time of the accident, the bright lights gave plaintiff a vision of 200 to 300 feet while with the dim lights he could see but 75 feet. Plaintiff testified in this case that the bright lights of the passing car did not shine in his face but did interfere to a certain extent. Evidence was offered of an impeaching nature which showed that plaintiff in another trial had testified that the lights did shine in his face.

There are many cases in other jurisdictions holding that it is negligence *per se* for a person to continue driving an automobile at night when he is blinded by a glare of a light from a car coming in the opposite direction and places the duty upon the driver of coming to a full stop if necessary and to standstill until he can see. *Ruth v. Vroom,* 245 Mich. 88, 222 N. W. 155, 62 A. L. R. 1528; *Mathers v. Botsford,* 86 Fla. 40, 97 So.

282, 32 A. L. R. 881; *Woodhead v. Wilkinson,* 181 Cal. 599, 185 Pac. 851, 10 A. L. R. 291; and notes and annotations in each of said A. L. R. reports following said cases.

In *Hazel v. Hoopeston-Danville Motor Bus Co.,* 229 Ill. App. 125, the plaintiff sued the owner of the approaching car bearing the bright lights which plaintiff claimed had blinded him so that he was prevented from seeing a wagon in the highway ahead of him and that by reason of such bright lights, he collided with the wagon, causing damage. It was there held that the plaintiff in continuing to drive his car at a time when he was blinded by the lights of the approaching car was guilty of contributory negligence. The Supreme Court in reviewing the case at 310 Ill. 38 held that there was evidence which tended to sustain the finding of the Appellate Court that the plaintiff was guilty of contributory negligence.

On the other hand, there are cases where the plaintiff was blinded by bright lights from an approaching car and it was held that the question of contributory negligence of the plaintiff was a question of fact for the jury. For illustration, in *Griffith v. Thompson,* 148 Wash. 243, 268 Pac. 607, it appeared that the lights of the approaching car intermittently blinded plaintiff before he collided with a truck. In *Providence v. Young,* 227 Ky. 690, 13 S. W. (2d) 1022, plaintiff while blinded by headlights drove on to an unlighted concrete mixer located on a village street; and to the same effect are *Buzick v. Todman,* 179 Iowa 1019, 162 N. W. 259; *Aubin v. Duluth Street R. Co.,* 169 Minn. 342, 211 N. W. 580; *West v. Marion County,* 95 Ore. 529, 188 Pac. 184.

Under the evidence in this case, we are of the opinion that the facts bring it within the rule announced in the latter cases. If, as plaintiff testified, the color of the truck and trailer blended with the ground and roadway so as to make it difficult to see the outline of the trailer

and that the bright lights of the approaching car did not shine in his face but furnished some interference and the fact that it occurred on a bend or curve in the road where the rays of the approaching light would follow the curve in the road, makes it a question for the jury to say whether plaintiff's failure to see the truck and trailer was because he was blinded by the approaching lights or whether it was by reason of the surrounding conditions and defendant's failure to have the truck and trailer properly lighted. Whether there were lights on the truck and trailer was disputed and was a question of fact for the jury.

It is defendant's further contention that plaintiff was traveling at an excessive rate of speed, and that the court erred in not directing a verdict on those grounds. On such a motion the court could only determine whether there was any evidence which tended to prove plaintiff's case and if there was, the motion could not be sustained. Plaintiff's evidence which is most favorable to his case is that he was driving 20 to 23 miles per hour at the time of the accident. When he first saw the trailer, he was about 20 feet from it and he testified that he applied his brakes as hard as he could and turned his car to the left to avoid the collision. There is no direct evidence that plaintiff's car could not be stopped within 20 feet when traveling at 20 to 25 miles per hour but the fair inference is that it could not.

The general rule is that it is negligence as a matter of law to drive an automobile at such a rate of speed that it cannot be stopped in time to avoid a collision with an object discernible within the driver's length of vision ahead of him. *Murphy v. Hawthorne,* 117 Ore. 319, 244 Pac. 79, 44 A. L. R. 1397; *Morehouse v. Everett,* 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482, and *Lindquist v. Thierman,* 216 Iowa 170, 248 N. W. 504, 87 A. L. R. 893, and cases cited in the annotations following each of said cases as reported in A. L. R.

There are cases which hold that by reason of certain conditions, it is a question of fact for the jury. The case of *Moyer v. Vaughan's Seed Store,* 242 Ill. App. 308, recognized the general rule and held that under the facts of that case the question of plaintiff's negligence was for the jury. The conditions referred to in the *Vaughan* case which took it out of the general rule are so similar to the facts in this case that we are of the opinion that it should control. The circumstances referred to by the court in the *Vaughan* case as making it a question for the jury is stated as follows: ''In the instant case we think it cannot reasonably be said that the driver of plaintiff's automobile was guilty of negligence as a matter of law. The night was dark and misty. The plaintiff was driving along a country road where standing vehicles were not to be expected. There is evidence to the effect that there was no rear light on the truck; that the color of the truck and its load blended with the coloring of the surface of the road. These, and many other circumstances which might be alluded to, show that all reasonable minds would not reach the conclusion that the driver of plaintiff's automobile was acting as no rational person would act under like circumstances, and, therefore, the question to be determined was one of fact and not law.''

Defendant also contends that plaintiff's testimony that he was driving 20 miles per hour around a bend or curve in the highway was prima facie negligence under section 23, ch. 95a, Cahill's (1933); sec. 27, ch. 95½, Smith-Hurd (1933). Defendant's photographic exhibits attached to the record shows that the view of a driver of a car approaching the scene of the accident from the south was in no way obstructed and therefore the statute has no application for it applies only to those cases where the driver's view in going around a corner or curve is obstructed.

Defendant's final contention is that the evidence does not show it to have been guilty of the negligence

charged. The negligence charged in the first and third counts was that the defendant did not have the truck and trailer properly lighted. We have already referred to the conflict in the evidence as to the lights on the truck and trailer and we are satisfied that that question was properly submitted to the jury. The second count charged a violation of the statute prohibiting a driver of a vehicle stopping on the pavement except in case of an emergency. Defendant contends that the emergency existed which caused it to stop. In the recent case of *Rhoden v. Peoria Creamery Co.*, 278 Ill. App. 452, the court reviewed the various decisions construing this statute and held that the rule to be deduced from them was that the exigency which will excuse a person from leaving a car on the public highway in violation of the statute is when the driver has no choice about leaving his car in that position. The evidence is in conflict as to whether the earth shoulder on the east side of the highway was sufficient width for the truck. If plaintiff's evidence was to be believed, then there was sufficient width for the truck and trailer to drive on. The truck driver testified that the truck rolled forward about 40 feet after the motor had stopped and that being true, he could have guided it on to the shoulder and off the pavement. There was defective operation of the motor at times for more than a mile and in that distance he passed a side road, yet he made no attempt to get off the pavement. We are of the opinion that an emergency which would excuse defendant for stopping on the pavement did not exist.

The court did not err in its rulings on any of defendant's motions and we find that the evidence supports the verdict.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*