## MERBACK v. BLANCHARD ET AL.

(No. 2151; September 12, 1940; 105 Pac. (2d) 272)

154

For the appellant, there was a brief by *Walter Q. Phelan* and *Bradford Ross,* both of Cheyenne, and oral arguments by *Mr. Phelan* and *Mr. Ross.*

For the respondents, there was a brief and an oral argument by *Mr. M. A. Kline* of Cheyenne.

KIMBALL, Justice.

Plaintiff, as administratrix of the estate of her deceased husband, John F. Merback, sued for damages for death of her husband and for injury to property which she alleged were caused by the negligence of the driver of a truck belonging to defendants. There was a jury trial, and after all the evidence on both sides had been heard, a verdict for defendants was directed. On plaintiff's appeal from the judgment on the verdict, the questions for decision are whether the directed verdict was justified either by lack of evidence to show that the damage was caused by the negligence alleged in the petition, or by evidence that required a finding that the deceased was guilty of contributory negligence as alleged in the answer.

Between 2 and 3 o'clock in the morning of October 5, 1938, defendants' truck, pulling a semi-trailer with a tank loaded with 1800 gallons of black oil for use in surfacing highways, was being driven by Art Thomas, defendants' employee, toward Bosler, Wyoming, on a state, oil-surfaced highway that runs southwesterly from a point near Wheatland, Wyoming, on the Yellowstone highway to a point near Bosler on the Lincoln highway. Because the lights on the truck were not working properly, the driver stopped on the right-hand side of the traveled part of the highway. Merback, traveling in the same direction in an empty truck, crashed into the rear of defendants' stopped truck and was so injured that he died almost instantly.

The negligence alleged in the petition was (1) the operation of the truck without the lights required by statute; (2) stopping on the main traveled portion of

the highway, and (3) the failure to put out flares as required by statute.

We think there was no substantial evidence to support a finding that Thomas had an opportunity to put out flares after he stopped and before the collision, and the third charge of negligence will not be noticed further. At a new trial it should be abandoned unless there is additional evidence to support it.

It is a matter of general knowledge, and shown by numerous cases, that unlighted or defectively lighted motor vehicles stopped at night on the traveled highways are the cause of many collisions. See Harkins v. Somerset Bus Co., 308 Pa. 109, 162 N. E. 163. The danger is recognized by statutes enacted for the purpose of guarding against it. Section 72-206, R. S. 1931, as amended by chapter 71, Session Laws of 1933, prescribes the lighting equipment for motor vehicles operated on the highways at night. Defendants' truck had the proper equipment, but it was out of order at the time of the accident. Paragraph H of the cited section provides that: "Whenever a vehicle is parked or stopped upon a highway whether attended or unattended during the [nighttime] there shall be displayed upon such vehicle one or more lamps one of which shall be on the roadway side and project a white light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle and one of which lamps shall project a red light visible under like conditions from a distance of 500 feet to the rear * * *." See Jackson v. W. A. Norris, Inc., 54 Wyo. 403, 93 P. (2d) 498.

Section 72-207, R. S. 1931, provides that: "No person shall leave standing, or cause or permit to be left standing upon the main traveled portion of any highway, a vehicle undergoing repair, or which has been stopped for the purpose of having repairs made thereon * * *; provided, however, that this provision shall not

apply to any vehicle so disabled as to prohibit the moving of the same in which case, however, said vehicle shall be provided during the hours of darkness with suitable lights both front and rear."

In considering whether the trial court was justified in taking the case from the jury we must accept as true the evidence in favor of the plaintiff together with inferences that might reasonably be drawn therefrom, and determine whether such evidence and inferences would support a verdict in plaintiff's favor. Collins v. Anderson, 37 Wyo. 275, 278, 260 Pac. 1089. We think defendants, in arguing that the evidence failed to make out a prima facie case of negligence as alleged in the petition, ask us to accept as true evidence in favor of defendants that the jury was not bound to believe. This is noticeable in reference to some of the testimony of the witness Thomas, the driver of defendant's truck. He was intensely interested, for, when he first related the facts, he was being held for manslaughter; yet the plaintiff had to rely largely on his testimony and the reasonable inferences that might be drawn therefrom, to prove her case. We think the jury had a right to accept as true parts of his testimony favorable to plaintiff, and to reject parts that they may have thought he had colored to excuse his conduct.

Thomas testified that the lights on the truck were working properly when he left Wheatland about 2 o'clock in the morning; while he was coming down Sand Creek hill, about 15 miles from Wheatland, the lights "went dim," but he did not then stop and the lights soon "came on again"; he drove ahead slowly for a mile or mile and a half when the lights again became dim, and after he had gone 100 or 150 feet further, were "pretty near down," so dim that he "just could see the road"; he then stopped with the right wheels of the truck a few inches to the left of the right edge of the oiled surface of the road. A second or so before

he decided to stop, he had noticed in his rear-view mirror the lights of Merback's truck which seemed to be about a mile behind him. Almost immediately after he stopped, the crash occurred. He testified that after his lights first went dim and then came on again they were practically as good as before while he traveled a mile or more to a point 100 or 150 feet from where he finally stopped. This testimony is relied on by defendants as showing a reason why Thomas was not looking for a place to get off the highway when, 280 feet from the place where he finally stopped, he passed a side road, a convenient and safe place to drive off the highway, which the jury may have believed he would have seen if he had been looking. We do not think the jury were bound to believe that it was not the duty of Thomas to have been looking for a place to get off the highway when he passed this side road. He admitted that after the lights first became dim, he realized that he had a weak battery or a "short," and that he continued at a speed of 15 to 20 miles an hour though he usually drove at a speed of 35 to 40 miles an hour. There was testimony that on the day of the collision he had said "that his lights got dim, they kept going on and off" and that "they first began to grow dim" coming down the Sand Creek hill. At the coroner's inquest he testified that the only lights he had was when the car was running; that "it would give you lights with the motor running, with the generator it would give you dim lights." We think the jury may have believed that the trouble with the lights, after it first became noticeable, was more constant than the witness was willing to admit at the trial, and that he should have been more watchful for an opportunity to remove the vehicle from the main highway.

At the place where Thomas stopped, and for a considerable distance in both directions, the road ran over level, open lands. The road was level and straight.

The oiled surface was about 22.6 feet wide, and the shoulder was 2.6 feet wide, of gravel, dry and in "good shape." There had been no recent rain. From the shoulder there was a gradual slope to the shallow barrow pit at the side. These conditions were shown by the testimony of witnesses who had taken measurements, and by photographs. The jury might have believed that the truck could safely have been driven entirely off the traveled part of the highway at any point within a hundred feet or more of the place where it was stopped. Thomas testified that when he stopped he wasn't able to see where he could get off the road; that he thought the shoulder was soft, and did not know the condition of the ground beyond the shoulder; but other testimony might have led the jury to believe that when he stopped he was not trying to get off the highway but only to get near the edge of the oiled surface.

We are of opinion that the defect in the lights of defendants' truck, which led the driver to stop, was, as fairly appeared from the evidence, due to a condition that developed a short time before the car was stopped, and not caused by a lack of due care on the part of defendants; but the defect made the operation of the truck on the highway in the nighttime unlawful, and it was the duty of the driver to get the truck off the highway if it was possible and safe to do so. See Rath v. Bankston, 101 Calif. App. 274, 281 P. 1081. We concede that a failure to do this would be excused if the evidence showed that the driver in the exercise of due care was unable to find an exit from the highway that appeared to be reasonably safe. This, in effect, is the excuse presented by defendants. We do not say that the jury might not have deemed it sufficient. But we do not think the evidence precluded a finding that the driver was negligent in stopping on the highway when there were at hand means of exit that he would

have seen and used if he had exercised ordinary care. The question, therefore, was one of fact for the jury.

In Wedig v. Kroger, G. & C. Co., 282 Ill. App. 370, the motor on defendant's truck "sputtered" about a mile from the place where it was finally stopped on the highway, and it was considered some evidence of negligence that the driver passed a side road before stopping. In Western Indemnity Co. v. Wasco L. & S. Co., 51 Calif. App. 672, 197 Pac. 390, the driver of a train of vehicles, who might have driven the vehicles entirely off the paved part of the highway, testified that he did not do so because the ground was wet and he was afraid the tractor wheels would slip. It was held that the jury was properly permitted to decide whether the driver was negligent in stopping with his left wheels on the pavement. In Wilson v. Droege, 110 Calif. App. 578, 294 Pac. 726, the plaintiff stopped her car partly on the highway, at a place where she could not have driven completely off, and it was held that she was negligent if she could have driven a short distance further to a place where she could have moved her car completely off the highway. In Slanger v. Hunter, 49 Ida. 723, 291 Pac. 1060, the driver of a truck, charged with negligence in stopping without lights on the highway, testified that his lights were giving trouble, and that in stopping to adjust them he drove as near the barrow pit to the right of the road as was practicable to do. It was held that the issue of negligence was for the jury. In Bos v. Richards, 71 Fed. (2d) 262, it was held that where there was a conflict in the evidence as to the feasibility of driving a truck entirely off the highway, the court could not say as a matter of law that the driver was not negligent in stopping on the highway. In Grubbs v. Grayson, 165 Wash. 548, 5 P. (2d) 1033, the plaintiff testified that the reason she did not move her automobile entirely off the highway was because the graveled shoulder was soft and wet,

and that she did get over as far as she deemed it safe to go. It was held that the question of her negligence in parking partly on the highway was for the jury. Other cases holding that the question of negligence in stopping a motor vehicle on the paved highway is one of fact are Giorgetti v. Wollaston, 83 Calif. App. 358, 257 P. 109 and Davis v. North Coast Transp. Co., 160 Wash. 576, 295 Pac. 921.

Most of these cases were decided in view of statutes, not essentially different from ours, designed to prevent the stopping of vehicles on the highways at night without proper lights. We have not noticed any case holding that a driver who stopped on the traveled part of the highway where it was possible and safe for him to have driven off the pavement was held free from negligence as a matter of law merely because he testified that he did not at the time realize that he could have safely driven off the road.

A question of more doubt is whether the directed verdict was justified by evidence tending to support the defense of contributory negligence. In considering this question we should keep in mind not only the rule noticed above, that evidence and inferences favorable to plaintiff will be accepted as true, but also that the burden of proof on the issue of contributory negligence was on defendants and, as stated in Ries v. Cheyenne C. & T. Co., 53 Wyo. 104, 118, 79 P. (2d) 468, that the question was one of fact that should have been submitted to the jury unless "reasonable men can draw but one inference which points unerringly to such negligence."

On this question, also, the defendants ask us to accept as true some evidence that would not necessarily have been believed and inferences that would not necessarily have been drawn by the jury. This seems so of evidence and inferences in support of defendants' contention that Merback was driving carelessly and at

an excessive speed. An employee of defendants testified that on the night and near the scene of the collision, while driving a truck toward Wheatland, he passed another truck with bright lights going in the opposite direction and that he could see that it was a truck of the make driven by Merback and could tell from the hum of the motor that it was being driven at a speed of about 60 miles an hour. The jury may have believed that it was unreasonable to suppose that the witness could recognize a truck and estimate its speed under such circumstances. It was also shown that the Merback truck was equipped with transmission having "overdrive" and "underdrive" gears, one furnishing more speed, the other more power, and that after the collision it was found that the transmission was in the overdrive gear; but it was not shown that that was not the proper gear to use in driving the empty truck over a level road, or that the car in that gear would necessarily be driven at a high rate of speed. It is argued that excessive speed was shown by the damage caused to the two trucks, but we think it was for the jury to say what inference as to Merback's traveling speed should be drawn from the evidence in regard to the effect of the collision. Russell, another truck driver, testified for defendants, stating that he was driving toward Wheatland and was within a quarter or half mile of the two trucks at the time of the collision. He testified that when he first saw the dim lights of defendants' truck and the bright lights of Merback's truck the two trucks were about a mile away and moving toward him; that afterwards and before the collision, Merback's lights at times were hid from his view by defendants' truck; that Merback's lights "seemed to be dodging in and out" or "weaving back and forth" behind defendants' truck. Defendants argue that this testimony should be accepted as true and as showing that Merback did not have his car under control. We

think the jury would have had the right to pass on the weight and effect of this testimony. The disappearance and reappearance of Merback's lights as viewed by the witness may have been caused by erratic movements of defendants' truck that was proceeding without proper lights, or by maneuvers of Merback that may reasonably have seemed to him proper under the circumstances.

There was, however, other and undisputed evidence bearing on the question of Merback's negligence. The night was clear. There was no moonlight, clouds or fog, and there had been no recent rain or snow. The road was level and straight for a mile each way from the place where the collision occurred. Merback was a young man with no known physical defects; he was an experienced truck driver, and was driving a truck equipped with proper lights and brakes. It was evident that he drove into the rear of the other truck without realizing that it was near. There were no marks on the road to indicate that he had applied his brakes, and the position of his front wheels did not indicate that they had been cramped in an effort to turn aside. These facts, we think, the jury would have been bound to believe.

There are many authorities announcing the rule that the driver of an automobile who fails to stop or turn aside to avoid an obstruction within the range of his lights is negligent as a matter of law. We think, however, that most of the courts recognize that this is not a hard and fast rule that must be invariably applied, and refuse to apply it when there is evidence from which the jury may find that there were disconcerting circumstances affecting the driver's actions at the time of the collision. Jackson v. W. A. Norris, Inc., 54 Wyo. 402, 93 P. (2d) 498, and cases cited; Morehouse v. City of Everett, 141 Wash. 399, 252 Pac. 157; Murphy v. Hawthorne, 117 Ore. 319, 244 Pac. 79, 44 A. L. R.

1397; Thesise v. Ashdown, 118 Oh. St. 307, 160 N. E. 898, 58 A. L. R. 1476; Coca-Cola Bottling Co. v. Shipp, 174 Ark. 130, 297 S. W. 856; Main Street T. & S. Co. v. Smith, 166 Tenn. 482, 63 S. W. (2d) 665. And see notes: 44 A. L. R. 1403, 58 id. 1493, 87 id. 900, and 97 id. 546. Comments: 22 Minn. L. Rev. 877, 23 Calif. L. Rev. 498, 4 Rocky Mountain L. Rev. 231, 34 Ill. L. Rev. 65.

In the case at bar the semi-trailer and tank of defendants' truck were black and soiled with black road oil, and the jury might have believed that at night under artificial light they would blend with the oiled surface of the road. It was admitted that the headlights on defendants' truck became so dim that the driver could "just see the road." The defect that caused this would cause a corresponding dimness in the rear warning lights which were on the same circuit. Merback watching the lights may have been led to believe that they appeared dim because the distance between the two trucks was greater than it actually was. At the time, of and just before, the collision, Russell's truck was approaching from the opposite direction. When Thomas was asked why he did not see Merback's lights in his mirror when he stopped, he gave replies that the jury may have understood as meaning that he was blinded by the lights from Russell's truck, and they might have inferred that Merback's vision was also interfered with. We think that in view of these disconcerting circumstances it cannot be held that plaintiff was negligent as a matter of law in failing to avoid the collision. The question was one of fact for the jury.

In Baldwin v. Norwalk, 96 Conn. 1, 112 Atl. 660, defendant claimed that under a statute an automobile driver who, at night, collided with a substantial object on a straight highway, with no other objects to obscure his view, was negligent either in failing to see the

object, or in not having the statutory lights that would have enabled him to see it. The court said:

"We do not construe the statute so as to create this dilemma. The statute must be construed in the light of common knowledge. It is common knowledge that substantial objects because of their composition or coloring, and the coloring of the surface or object upon which they rest, are visible in greatly varying degrees when artificial light is thrown upon them. They are not necessarily clearly visible."

Other cases show that it is proper for the jury, in determining whether a driver was negligent in driving into an obstruction on the road, to consider how the visibility of the obstruction was affected by its color and the color of the road on which it rested. Adamek v. Tilford, 125 Nebr. 139, 249 N. W. 300; Baker v. Hemingway Bros. I. T. Co., (Mass.) 12 N. E. (2d) 95; Wedig v. Kroger G. & B. Co., 282 Ill. App. 370; Johnson v. Kutches, 205 Minn. 383, 285 N. W. 881; Sponable v. Thomas, 139 Kan. 710, 33 P. (2d) 721; Central Surety Ins. Corp. v. Murphy, 103 F. (2d) 117. In several of these cases it was also noted that the jury might infer that the driver was confused by the lights from an approaching car. On that matter see, also, Steber v. Malanka, 14 N. J. Misc. 141, 182 Atl. 890; Brown v. Raymond Bros. M. T. Co., 186 Minn. 321, 243 N. W. 112; Farley v. Ventresco, 307 P. 441, 161 Atl. 534; Sprague v. Herbel, 90 Colo. 134, 6 P. (2d) 930.

In England, as late as 1933, it was held in decisions of the Court of Appeal, that if a driver of a vehicle goes so fast in the dark that he cannot avoid an obstruction within the limits of his vision, that will prevent him from recovering damages caused when he collides with the obstruction. But still more recently in Tidy v. Battman (1934) 1 K. B. 319, 103 L. J., (K. B.) 158, the same court declined to regard this as

a general principle, and approved by the judgment of Macnaughton, J., of the Divisional Court who said, among other things, that: "At night time the visibility of an unlighted obstruction to a person driving a lighted vehicle along the road must necessarily depend on a variety of facts, such as the colour of the obstruction, the background against which it stands, and the light coming from other sources." In the Court of Appeal, Lord Wright remarked: "The cases * * * show that no one case is exactly like another, and no principle of law can in my opinion be extracted from those cases. It is unfortunate that questions which are questions of fact alone should be confused by importing into them as principles of law a course of reasoning which has no doubt been properly applied in deciding other cases on other sets of facts."

The judgment will be reversed and the case remanded for a new trial.

RINER, Ch. J., concurs. BLUME, J., concurs in the opinion except that he believes that the facts show that the deceased was guilty of contributory negligence as a matter of law and to that extent dissents.