LEO WILHELM, as Administrator of the Estate of John Wilhelm, also known as John M. Wilhelm, Deceased,

*Plaintiff and Appellant,*

vs.

EUGENE H. CUKR,

*Defendant and Respondent.*

(No. 2473; February 27, 1951; 227 Pac. (2d) 988)

For plaintiff and appellant the cause was submitted on the brief and also oral argument of G. R. McConnell of Laramie, Wyoming and Lorin Guild of Wheatland, Wyoming.

For defendant and respondent the cause was submitted on the brief and also oral argument of Vincent Mul-

vaney and Clarence A. Swainson, both of Cheyenne, Wyoming.

4

5

5

6

## OPINION

RINER, Justice.

This direct appeal proceeding brings a judgment of the District Court of Laramie County here for review. The action wherein this judgment was rendered arises out of an automobile collision resulting in the death of

John Wilhelm plaintiff's intestate. The parties to the action, Leo Wilhelm who, as administrator of the estate of John Wilhelm, deceased, plaintiff below and now appellant began this litigation in the court aforesaid against Eugene H. Cukr as defendant, now the respondent, will be hereinafter usually referred to as designated in the trial court aforesaid. Dissatisfied with the action of the District Court in instructing a verdict for the defendant upon the conclusion of plaintiff's evidence only, and entering judgment thereon dismissing the action, the plaintiff appeals.

A brief survey of the pleadings of the parties will disclose with reasonable accuracy the nature of the controversy subsisting between them. Plaintiff's amended petition may be summarized as follows:

After stating in paragraph "1" his official position as administrator and his authorization to institute the action, paragraph "2" states in substance that on February 18th 1949 the defendant owned and used a Cadillac automobile for travel purposes and on said date was driving it on U.S. highway 87 about 3 miles north of Wheatland and about the hour of 12:15 p.m. moving in a northerly direction near where said highway intersects a county road.

Paragraph "3" alleges that John Wilhelm, plaintiff's intestate, owned a Ford automobile also used for travel and while he was with due care "proceeding westerly on the county highway" at said intersection of said county road and U.S. highway 87, the defendant negligently drove his automobile "at and in said intersection" with the proximate result of said negligence that he struck the Wilhelm car so that the driver, Wilhelm, was knocked to the ground and severe physical injuries were inflicted upon him from which he died on February 18th 1949.

Paragraph "4" sets forth the specific acts of negligence thus committed by the defendant which were (a) that the defendant in violation of law failed "to keep said auto under control as provided by W.C.S. 1945 § 60-501, and to slow down or stop the same" until it could safely approach the Wilhelm car (§ 60-505 W.C.S. 1945, paragraphs 1 and 2) (b) That defendant unlawfully drove his automobile in excess of the posted speed of 45 miles per hour on U.S. highway 87 on a curve in said highway contrary to W.C.S. 1945 § 501 d. and the rules of the Wyoming Highway Department which prescribed the speed at which said curve could be travelled by all persons. (c) That said defendant in violation of § 60-505 W.C.S. 1945 failed to keep his automobile on the right side of the highway but drove his motor vehicle on the left side of the road where he had no right to be and also at such a rate of speed and so negligently that he struck the Wilhelm car when it was properly on the right side of the road. (d) That defendant recklessly drove his automobile on highway 87 within an area where car speed was restricted to 45 miles per hour, at an excessive speed and in excess of 55 miles per hour, in violation of § 60-501 d. W.C.S. 1945 and in violation of the posted speed at the point in said highway "where said county road and highway 87 intersect each other."

The remaining portions of the plaintiff's amended petition dealing with the matter of alleged damages is not germane to the questions arising on the present appeal and need not be reviewed at this time.

The defendant filed an amended answer which alleged substantially as follows:

He admits the allegations of paragraph "1" and "2" of plaintiff's amended petition and that John Wilhelm was the owner of a Ford automobile and "was proceed-

ing westerly on the county highway" at the intersection of said county road and highway 87 at the time alleged in plaintiff's amended petition, but denies the remaining allegations of fact set out in paragraph "3" thereof. The allegations of fact set out in paragraph "4" are also denied.

As a second defense defendant stated in paragraph "1" thereof that the injuries and death of John Wilhelm were due to and the sole proximate cause thereof was the negligence of said John Wilhelm in these particulars:

"(a) In not stopping his said automobile at said time and place at the entrance to said main highway No. 87 at the intersection of said cross road and in not yielding the right-of-way to the automobile being driven by defendant, which was lawfully proceeding on said through highway;

"In not stopping at the entrance to said main highway from said side road in obedience to the stop sign erected by the Highway Department pursuant to § 60-527 Wyoming Compiled Statutes 1945 at the entrance to said highway, and in not yielding the right-of-way to the defendant;

"(b) In not stopping at the stop sign erected at the entrance and intersection to a through highway, in violation of sections 60-527 Wyoming Compiled Statutes 1945."

As a third defense it was alleged that John Wilhelm was himself negligent as alleged in the second defense above and this negligence "proximately contributed to the happening of said accident" and bars plaintiff's recovery for Wilhelm's injuries and any damages.

The amended answer sets forth also as a 4th defense substantially that by reason of John Wilhelm's negligence defendant was placed in and suddenly confronted by an imminent peril so that to avoid injury to himself and the other occupants of his car and John Wilhelm

he turned his car abruptly to the left; that the defendant had no time to deliberate as to what was the best course to pursue to avoid said peril caused by plaintiff's intestate, but took the best course to avoid a head-on collision with plaintiff's intestate; that by reason of this emergency caused by John Wilhelm the defendant's automobile collided with that of the plaintiff's intestate without fault on the defendant's part.

Plaintiff filed a reply denying all of paragraph "1" of the second defense with its several sub-divisions as given above. As to defendant's alleged third defense plaintiff states that:

"The negligence of the defendant in the operation of his said automobile was the direct, proximate and sole cause of the impact and the death of John M. Wilhelm as heretofore set forth in plaintiff's petition."

As to defendant's fourth defense plaintiff stated that: "Any sudden or imminent peril to the defendant alleged in the fourth defense was caused by the defendant himself if any existed."

As we have already stated the cause went to trial in the District Court with a jury in attendance and after plaintiff had submitted his evidence and had rested, the defendant without producing further evidence in the case in his behalf moved for a directed verdict:

"For the reason that the plaintiff has failed to prove any of the allegations of negligence in his amended-petition and that any verdict rendered by the jury would be based upon conjecture and speculation; and, for the further reason that plaintiff's evidence discloses that the plaintiff's intestate was guilty of contributory negligence, barring a recovery."

Thereupon the trial judge said:

"There appears to be a failure to observe the stop sign; that the evidence does not indicate that the plaintiff observed the stop sign which was along the side road as it approached the highway, and that in the absence of such showing, there is failure here on the part of the

plaintiff to establish what he was required to show; that under the circumstances there was contributory negligence on the part of the plaintiff for want of due care on his part."

This court has had occasion in the past to indicate how plaintiff's evidence must be regarded on review here under the circumstances this record presents. It is proper that we should recall what has in such cases been heretofore ruled.

In Collins vs. Anderson 37 Wyo. 275, 278; 260 Pac. 1089 this court said:

"In considering whether the trial court was justified in taking the case from the jury we must accept as true the evidence in favor of the plaintiff together with such inference as might reasonably be drawn therefrom, and then determine whether such evidence and such inferences would support a verdict in the plaintiff's favor if such a one were returned by the jury. We are not concerned with conflicts in the evidence. That is for the jury. Our only inquiry is whether the evidence in the plaintiff's favor if believed by the jury would, with reasonable inferences therefrom, warrant a verdict in her favor."

Of similar purport are our cases: Boyle vs. Mountford 39 Wyo. 141, 147; 270 Pac. 537; Hester vs. Coliseum Motor Co. 41 Wyo. 345, 352; 285 Pac. 781; Merback vs. Blanchard 56 Wyo. 152, 161; 105 Pac. (2d) 272.

As additional authorities dealing with the same point and citing many other authorities are: 64 C.J. 432, 433, § 426; 3 Am. Jur. 440, 441 § 886.

In connection with these decisions it will be of assistance herein to review the following:

Quoting from an earlier case from the same jurisdiction the Supreme Court of Washington in Morris vs. Chicago M. St. P. & Pac R. Co. Wash. (2) 587, 97 Pac. (2d) 119, 126, 127, said:

"In Smith v. Inland Empire R. Co., 114 Wash. 441, 195 P. 236, 237, the following rule is announced: 'Since no one saw the deceased at the time he approached the crossing, and since there was no evidence to show what he did at or before he attempted to cross the railway track, it must be presumed that he used due care.' "

Concerning this rule the court remarked:

"We think the rule is based primarily upon the fact that there is no evidence to show what the deceased did or did not do immediately preceding the accident, and so, where an action is brought for damages resulting from such death, in order that the action may go forward, in the first instance, to that stage of the proceedings where it can be presented to a court or jury, the law indulges in a conclusion which presumably is based upon human experience, that the deceased must be presumed to have used due care."

Further on the point it was indicated that:

"We are therefore now of the opinion that the following are the proper rules to be applied relative to the presumption of due care:

(1) This presumption is not evidence, but will serve in the place of evidence until prima facie evidence has been introduced by the opposite party."

In Teegarden vs. Brown 111 Ind. Appeals 159, 39 N.E. 2d 793 with a situation somewhat like that at bar before it, the court said:

"Under his grounds for a new trial numbered 1 and 2, appellant next contends that the decedent was guilty of a contributory negligence as a matter of law in failing to stop before entering a preferential highway. The evidence on the point is so confused that it is not possible to tell where the decedent stopped, if at all. However, there is evidence that before the collision the decedent had proceeded across the south and middle lanes of highway 67 and was in the extreme north lane which was the lane to the extreme left of appellant. Even though the decedent's car entered the intersection without stopping, the question as to whether such negli-

gence was a contributing cause of his injuries and resultant death was for the jury." (citing cases).

The Supreme Court of Idaho in Madron vs. McCoy 63 Idaho 703; 126 Pac. (2d) 566, in similar vein had this to say:

"Here the driver charged with contributory negligence, is dead; and the law raises 'the presumption * * * that one who was killed * * * was exercising reasonable care and precaution for the protection and preservation of his person and life.' Chiara v. Stewart Mining Co. 24 Idaho 473, 478, 135 P. 245; Fleenor v. Oregon Short L. R. R. Co., 16 Idaho 781, 102 P. 897; Adams v. Bunker Hill, etc., Min. Co., 12 Idaho 637, 643, 89 P. 624, 11 L.R.A., N.S., 844.

"Bearing in mind this rule and the fact, that the burden of proof was on defendant, we are unable to find in the record either direct or circumstantial evidence sufficient to establish contributory negligence, either in fact or law, on the part of the driver of the alleged overtaking truck."

In Wahrenbrock vs. Los Angeles Transit Lines 84 Cal. App. (2d) 236, 190 Pac. (2d) 272, the court in discussing the presumption we may properly keep in mind here, made use of this language:

"The evidence introduced by the plaintiffs in the present case is not 'wholly irreconcilable' with the presumption that every person obeys the law, that a person is innocent of wrong, and that the decedent exercised due care for his own safety. There is no evidence that the decedent did not look and listen. It is presumed that he did and that he, at all times, exercised the requisite degree and amount of care for his own safety by looking in the direction from which danger could be anticipated. Whether he did or not, was a question for the jury. The situation is the same as if he were alive and had testified that he did and did not do all things which a reasonably prudent person would have done or would not have done under like circumstances. The deceased was upon a public highway, a place where he was lawfully entitled to be, and he was about to cross defendant's

right of way upon a public highway traversing the right of way. As was said in White v. Los Angeles Railway Corporation, 73 Cal. App. 2d 720, 728, 167 P. 2d, 530, 534; 'The question of whether he should have observed the immediate proximity of the streetcar, or whether, in making an error in judgment as to the speed or danger of the approaching streetcar, he was guilty of contributory negligence, was also for the consideration of the jury, the test, under these circumstances, being whether deceased's action was compatible with the conduct of a person of ordinary prudence.'

"The following statement of the Supreme Court in Anthony v. Hobbie, 25 Cal. 2d 814, 818, 155 P. 2d 826, 829 is appropriate: 'Turning to the question of contributory negligence on the part of the decedent, certain rules must be remembered. The burden of proving contributory negligence is upon the defendant. 19 Cal. Jr. 697-699. True, contributory negligence may be found by the trier of fact from the plaintiff's own evidence. But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion.' See, Wright v. Los Angeles Ry. Corporation, 14 Cal. 2d 168, 93 P. 2d 135.

"The trial court granted the motion for a judgment of nonsuit upon the ground that decedent was guilty of contributory negligence as a matter of law. He did not pass upon the question of whether there was evidence of negligence on the part of the motorman which approximately caused the death of decedent. Under the facts, it is obvious that there was sufficient evidence to require the submission of the cause to the jury on that question. The jury could reasonably have concluded from the evidence that the motorman saw decedent's

automobile when the streetcar was at least 100 feet from the intersection; that when he, the motorman, was from 60 to 100 feet from the intersection he saw, or could have seen, decedent turn onto the right of way and start across; that he should have applied his brakes when he saw decedent start across the right of way instead of waiting until he reached the intersection to do so; and that if he had done so the automobile would have cleared the track without being struck; in fine, that he did not exercise ordinary care in the operation of the streetcar."

The court then held that the trial court erred in granting defendant's motion for a judgment of nonsuit. Subsequently, the Supreme Court of California declined to review this case in that court.

We find Vol. 9 (Part 2) Blashfield's Cyc. of Automobile Law and Practice page 351 § 60-51 says that:
"The presumption is that the deceased did what a prudent man would have done under the circumstances until the accident occurred. Hence it is not necessary to prove that the deceased, in crossing a street, looked from right to left after he left the sidewalk, as it will be presumed that he looked and listened."

See also 15-16 Huddy's Cyc. of Automobile Law § 166 pp. 322-324.

Concerning the duty of a motorist to keep a look out for cars which enter a highway and cross it at intersections 2 Blashfield's Cyc. of Automobile Law and Practice pp. 222-224 § 1037 citing numerous decisions says that:

"Motorist approaching a highway crossing, in order to exercise that reasonable care to avoid injuring or being injured which is the measure of duty of such drivers, must look for other vehicles approaching or crossing the intersection. The duty is, indeed, not merely one of looking, but is one of observation, imposing upon a motorist so approaching the necessity of being observant as to the traffic and general situation at or in the vicinity of the intersections; he must look in such

an intelligent and careful manner as to enable him to see what a person in the exercise of ordinary care and caution for the safety of himself and others could have seen under like circumstances."

The recent case (October 9, 1950) Podeszwa vs. White ——— Cal. App. 2d ———, 222 Pac. (2d) 683 is helpful in aiding us to determine what disposition should be made of the case before us as the record now stands.

In that case the defendant suffered a judgment rendered against him and so appealed. The detailed circumstances in the case are given in the following excerpt from the opinion filed:

"Orangethorpe Avenue is a through highway extending easterly and westerly; it is paved to a width of between 35 and 40 feet. Hansen Road is a 20 foot, two-lane highway extending northerly and southerly, crossing Orangethorpe at right angles. There are no signs limiting speed of vehicular traffic on Orangethorpe. Boulevard stop signs protecting Orangethorpe traffic are located on Hansen Road at the southeast and northwest corners of the intersection, the former being approximately 12 feet south of the south edge of the Orangethorpe pavement. The area was 'open country', Orangethorpe being a 55 mile zone. Approximately 80 feet south of Orangethorpe on the west side of Hansen was a house which was set back 20 to 30 feet west of the west edge of Hansen. At the time of the accident there were no obstructions between the two cars involved. The dwelling house did not prevent defendant driver from seeing the other car involved in the accident.

"The weather was clear. Defendant White was traveling easterly on Orangethorpe at a speed of approximately 40 to 45 miles an hour. He was on a through highway which he knew was protected at Hansen Road by boulevard stop signs. There was no traffic behind or in front of him, the only vehicles in the vicinity being the two that subsequently collided.

"Defendant was driving a two-ton Ford Truck and decedent was a passenger in a Ford coupe."

In affirming the judgment the appellate court said: "When the defendant saw the coupe pass the boulevard sign at a speed of 5 to 10 miles an hour it should have been evident to him that the driver did not intend to make the boulevard stop. Nevertheless, he made no effort to avoid a collision. According to his own statement his truck struck the rear wheel of the coupe at about the center line of the south half of the Orangethorpe pavement. Manifestly by a very slight swerve of his truck he could have passed behind the coupe and avoided the accident. Furthermore when he observed the coupe passing the boulevard stop sign and approaching the Orangethorpe pavement the application of his brakes would have slowed his truck sufficiently to allow the coupe to pass in front of him. The fact that the driver of the coupe did not make the boulevard stop as required by law, Vehicle Code §§ 522, 577, did not justify defendant in failing to reduce his speed or change the direction of his car in an effort to avoid the accident."

The salient facts of the case before us as we gather them from plaintiff's evidence, and which we must take as true, with all reasonable inferences which may fairly be deduced therefrom are these:

The accident happened in broad daylight shortly after 12 o'clock noon on main highway 87 about three miles north of Wheatland, Wyoming, where that highway runs in a northerly and southerly direction. A county road intersects this road at that point very nearly at right angles, extending in an easterly and westerly direction. A highway stop sign is located near the north easterly corner of the intersection of these two thoroughfares and 35 feet from the center line of U.S. highway 87. Near the county road on its north side and easterly from highway 87 is a house wherein lived Herman Wilhelm, a nephew of deceased, the house being not far from the intersection of the two highways above mentioned. Shortly after 12 o'clock noon Herman invited his uncle to stay for dinner. The latter declined,

got in his Ford car and drove southerly to the county road and thence west to the intersection already mentioned. It is only about 87 steps to the highway west from the entrance into the county road of the road from Herman Wilhelm's home. The deceased was evidently on his way to Wheatland as his home was several miles easterly from that town.

The defendant Cukr, was an experienced bus driver for a through line of buses which run northerly and southerly over U.S. highway 87. He was off duty on February 18, 1949 when the accident happened. The day before the accident he drove over this highway southerly to Cheyenne, Wyoming. He had been on this Cheyenne to Casper run, Casper being the northerly terminus of his route, "steady" for the past four years, driving over it practically every day, going up to Casper one day and back to Cheyenne the next day. On February 18th 1949 he was driving his own car, a Cadillac automobile. This car was equipped with brakes that would stop it driven at 20 miles per hour within a distance of 30 feet. Cukr was familiar with the county road near where the accident happened and saw it every day as he drove up and down the main highway. It appears there is a slight curve westerly in U.S. highway 87 as it proceeds northward past the intersection aforesaid and the defendant was familiar with this fact. As one travelled north on said highway 87 there was a highway sign some distance south of the intersection of these two roads indicating a left turn with the number 45 below it. The number meant to defendant that 45 miles per hour was a safe speed at which to traverse this highway curve. From south to north through said intersection there is a solid line indicating the center of said Highway 87. The length of the Cadillac car which defendant was driving was approximately 16 to 18 feet, its width approximately 6½ to 7 feet.

Defendant's car was in perfect condition mechanically, the day the accident occurred, including its brakes. Nothing interfered with Cukr's vision through the Cadillac's windshield. The day was clear. He had in the past noticed how the occupants of the Herman Wilhelm house left it and came out to said highway 87 from the county road. Cukr had no defect in his vision at the time of the accident and no other bodily defect. Both the county road and highway 87 were dry.

Shortly after the accident the Ford car was found with its rear end on the easterly side of the center of the highway. Its front end, the right front wheel, and part of the other front wheel were on the westerly side of the center of the road. The defendant's car, the Cadillac, was found in the borrow pit on the west side of U.S. highway 87. The former struck the Ford car with the Cadillac's right front end. The point of contact on the Ford being on the latter's left front end, producing nearly a head-on collision.

The skid marks of the Cadillac car began 67 feet southerly on highway 87 to a point where they left that highway at the south edge of its intersection with the county road. It was 129 feet from the south edge of the intersection where the skid marks left the oiled surface of highway 87 to where the Cadillac stood in the borrow pit.

The Coroner of Platte County who picked up John Wilhelm, the Ford driver, and brought him to the Wheatland Hospital where Wilhelm died shortly after arrival there, stated that he talked to the defendant in one of the hospital rooms where the latter had been brought with his wife and child by another car which arrived later at the scene of the accident. The Coroner testified for the plaintiff in part as follows:

"I asked him if he was driving a bus or if he was in his

car. He said he was driving his car. I asked him what happened. He said, well, there was a car drove out on the road in front of him and he had to take to the ditch. Let's see, I asked him how fast he might have been driving and he said 'Well, probably 55 or 60'. 'Well,' I said, 'Gene, you are the first man that ever told me that you were going over,'—The stock story is 35 on most of these accidents. That is how I remember after he said that."

The defendant, his wife and child, were brought from the scene of the accident to the Wheatland hospital by a Mrs. Adam Goetz, also a witness for the plaintiff. She talked with Cukr while driving to the hospital. In response to the question "Tell the court and jury just what conversation you had with Mr. Cukr," Mrs. Goetz answered:

"I said, 'How in the world did that happen?' *Mr. Cukr said he didn't see the car till he hit it.* Then I asked him where he was from. He said from Cheyenne. And I asked him where he was going. He said he was going to, if I am not mistaken, going up to a festival, but I did not—I don't remember just where it was now." (Italics supplied).

This testimony was confirmed by Mrs. Goetz's husband who sat in the rear seat of the car with defendant's wife and child and overheard the statement made by Cukr.

It would seem to be clear from what has been set forth above that Cukr was driving at a high rate of speed, at least close to the maximum permitted by the laws of Wyoming (W.C.S. 1945 § 60-501.) Part of § 60-501 supra reads as follows:

"(c) The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed where any hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid collid-

ing with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

Under the authorities set forth hereinabove and the above recited facts we think the District Court erred in directing a verdict for the defendant. There was a presumption that plaintiff's intestate in entering and proceeding on highway 87 from the county road used due care. There is nothing in plaintiff's evidence that has been drawn to our attention that overthrew this presumption. But even if John Wilhelm had disregarded the stop sign at the north-easterly corner of the intersection aforesaid and then driven out upon highway 87 that afforded no excuse for the defendant's maintaining a speed such as he was driving without keeping a proper lookout for cars entering the highway from the county road and with which he was so familiar. He knew that they did that. His car should have been under control and application of his brakes would have slowed the Cadillac so that it could have passed behind the Ford car and remained on the right side of the road where he should have been.

Instead he swerved the Cadillac vehicle to the left evidently after he struck the Ford car and his speed was such as to carry his car 129 feet off the oiled highway into the borrow pit even after the collision between the two cars had taken place. If he had been maintaining a proper speed and observation at the time he approached the county road the accident would not have happened. He states he did not see the Ford car until he "hit it." Assuredly in the situation disclosed here, without more, the Jury could have found that he took no precautions to reduced his speed or control his car until he struck the Ford automobile.

It would seem to be a reasonable inference also that he applied his brakes at the moment of impact between

the two cars. The skid marks of the Cadillac car on the highway 87 began about the center thereof; then pursued a north westerly course some 67 feet to the southerly and westerly edge of the intersection, thence 129 feet to where the Cadillac came to a stop. That car as before indicated, appears to have struck the Ford on the latter's front left side with the former's front and right side as the Cadillac pursued an angling course to the westerly side of the oiled highway. All these facts when considered together result, it seems to us, in a situation which was for the Jury to consider.

It is urged for the defendant that the position of the Ford car after the accident shows that it was for the most part on the wrong side of the road and hence it should be considered that it was on the wrong side of the road at the time it was struck. This, it seems to us, disregards the fact that the terrific impact of the heavy Cadillac car travelling between 55-60 miles per hour pushed the light Ford car back northerly on the highway many feet and just where it was when hit can only be determined through the presumption that John Wilhelm was obeying the law as he drove southerly and was on his own side of the road.

It is suggested for the defendant also that because the county road 38 feet easterly of the center of the intersection of that road and highway 87 "was only .8 of a foot lower than the surface of the highway" that plaintiff's intestate should have seen the plaintiff's car approaching the intersection from the south. We are not pointed to any proofs in plaintiff's evidence that there was an unobstructed vision from the point mentioned to where the defendant's car was at the time Wilhelm arrived at the point mentioned. These matters, as they appear to us, were all for the examination by the jury. The cases cited by the defendant do not present situations so closely paralleling those in the

case at bar so as to be in point, and for that reason do not aid us in the determination of this litigation as it at present stands before the court. The judgment of the District Court is reversed and the cause remanded with instructions to grant a new trial.

*Reversed with instructions.*

KIMBALL, C. J. and BLUME, J., concur.

## ON PETITION FOR RE-HEARING

(No. 2473; May 1, 1951, 230 Pac. (2d) 507)

Clarence A. Swainson and Vincent Mulvaney, Cheyenne, in support of Petition for Rehearing.

## OPINION ON REHEARING

RINER, Justice.

A petition for rehearing has been filed by counsel for respondent. As so often is the case with such filings the same points are undertaken to be re-argued which were presented at the oral argument and by the briefs of the parties heretofore submitted, and which were given full and careful consideration by the court before the original opinion herein was prepared and filed. Ordinarily in such a situation no useful purpose would be subserved by adding to or altering what was said in that opinion. In this instance however counsel seem to think that we have "failed to take into consideration that the case at the time of its submission to the court is based solely on evidence submitted by plaintiff." Counsel are in that respect very gravely mistaken.

After reviewing the pleadings in the case we pointed out that the case went to trial in the district court with a jury in attendance and "after plaintiff had submitted his evidence and had rested" the defendant "without producing further evidence in the case in his behalf moved for a directed verdict" and that motion was sustained.

We thereupon proceeded to follow the rule on review established by previous decisions of this court and made applicable "under the circumstances this record presents." That rule required us to "accept as true the evidence in favor of the plaintiff together with such inferences as might reasonably be drawn therefrom." That rule of course is not applied where both sides in a contested case have presented their evidence except where there exists a substantial conflict in the evidence and the jury or trier of fact has resolved the conflict in favor of plaintiff. Counsel surely must know that this is so.

It is repeatedly insisted for respondent that if Wilhelm had stopped his car in obedience to the stop sign on the county road leading to its intersection with highway No. 87 on which Cukr was driving his Cadillac car the accident would not have occurred.

But there was no proof in the record by evidence so far as is drawn to our attention as to what Wilhelm did, or did not do, just before his entry upon highway 87. No eye witness who saw the accident happen was produced by the plaintiff. Respondent concedes that this is true. That being so, we were obliged to apply and be guided by what is frequently referred to as the "Eye witness rule in death cases."

Under such situations 25 C.J.S. 1207, § 80 says that: "* * * the general rule is that there is a presumption, in the absence of eyewitnesses to the accident or other evidence sufficient to dispel or rebut it, that decedent, acting on the instinct of self-preservation, was in the exercise of ordinary care."

In support of this view decided cases from more than 25 different jurisdictions are cited.

And the Supreme Court of the United States speaking by Mr. Justice Sutherland in Miller v. Union Pac. R. Co. 290 U.S. 227, 54 S.Ct. 172, 78 L.Ed. 285 has said: "If, as here, there be no evidence which speaks one way or the other with respect to contributory negligence of the person killed, it is presumed that there was no such negligence. Looney v. Metropolitan Railroad Co., 200 U.S. 480, 488, 26 S.Ct. 303, 50 L.Ed. 564."

In Hooton v. City of Burley, —— Ida. —— 219 P. (2d) 651 the Supreme Court of Idaho has very well said in its consideration of this point:

"In an action for damages for a wrongful death, the presumption which arises in favor of the instincts of self-preservation and the known disposition of men to avoid injury or personal harm to themselves constitutes a prima facie inference that the person killed was at the

time in the exercise of ordinary care and was himself free from contributory negligence, and the law presumes unless the contrary is shown, that such deceased person exercised the measure of care which it was his duty to exercise. Adams v. Bunker Hill & Sullivan Mining Co., 12 Idaho 637, 89 P. 624, 11 L.R.A., N.S., 844; Geist v. Moore, 58 Idaho 149, 70 P. 2d 403.

"This presumption which arises in favor of self-preservation and the known disposition of men to avoid injury is rebuttable. Geist v. Moore, 58 Idaho 159, 70 P. 2d 403. "Contributory negligence is a matter of defense, and the burden of proving such is on the party pleading such defense. Sec. 5-816, I.C.; Knauf v. Dover Lbr. Co. 20 Idaho 773, 120 P. 157; Burns v. Getty, 53 Idaho 347, 24 P. 2d 31; Madron v. McCoy, 63 Idaho 703, 126 P. 2d 566.

"Negligence or contributory negligence, and the proximate cause of the death or injury, are questions of fact and unless the proof is such that reasonable minds could not differ, the question of negligence or contributory negligence is one for the jury."

See also the additional cases reviewed in the original opinion heretofore filed herein.

Complaint is made for respondent that we should not "assume" "that plaintiff was not keeping a proper lookout" and "that he did not have his car under proper control." Counsel apparently overlooks the statement made by Mr. Cukr immediately after the accident as testified to by one of plaintiff's witnesses that "he (Cukr) didn't see the (Wilhelm) car till he hit it." If that is true, as we are obliged to consider that it is under the present record, we fail to see why it was not a reasonable inference from the obvious fact that the Wilhelm car was on highway 87 directly in front of the approaching Cukr automobile. 60 C.J.S. 847 § 357 declares upon ample supporting authority that:

"It is the duty of a driver of a motor vehicle at an intersection to keep his vehicle under such complete control

as to be prepared for conditions which he may reasonably expect to find there."

Cukr was familiar from his daily service as a bus driver with the fact that vehicles came out of the intersecting county road upon highway 87.

Counsel also insists that we were at fault in not giving proper attention to the cases of Madge v. Fabrizio 179 Md. 517, 20 A. 2nd 172, and especially Hogan v. Nesbit 216 Ia. 75, 246 N.W. 270 which we are told is the leading case and "directly in point" as regards "stop sign at an intersection." Evidently counsel overlooked these statements in the case last mentioned:

"On the other hand, F. W. Reisner, testifying for the appellee, stated that the appellant's intestate did not stop his automobile before crossing the intersection. * * * Furthermore, this witness said that the appellee swerved his car to the left at the intersection in an apparent attempt to avoid hitting the car driven by the appellant's intestate. There is no contradiction of Reisner's testimony on the issue that the appellant's intestate did not stop his car before entering the intersection."

No such facts appear in the record before us.

We find it clear upon examining the opinions in these cases once more that there were in those cases eye witnesses to the accidents and who testified in both of them. Consequently they were not regarded as helpful in the case at bar as it at present stands in this court.

There is no need of prolonging this opinion though much more could be said in disapproval of the views now urged for respondent in the case at bar. The petition for rehearing should be denied, satisfied as we are upon re-examination of the matter that the case was properly decided and that we need not alter the opinion originally handed down herein.

*Denied.*

KIMBALL, C. J., and BLUME, J., concur.