No. 17,268.

EBERLE *v.* HUNGERFORD ET AL.
(274 P. [2d] 93)

Decided September 13, 1954.

Messrs. HORNBEIN & HORNBEIN, Mr. ROY O. GOLDIN, for plaintiff in error.

Messrs. WOLVINGTON & WORMWOOD, for defendant in error Hungerford.

Mr. CHARLES R. ENOS, Mr. C. CHARLES BUCHLER, BERNICE M. BUCHLER, for defendant in error Castanie.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

THE parties are here in the same order as they appeared in the trial court. We shall so refer to them or by name.

On August 29, 1951 Ella Eberle was a passenger in an automobile owned and driven by defendant Hungerford. They were traveling in a westerly direction on East Eighth Avenue in Denver, at about 8:45 p.m. At the same time, defendant Castanie was driving his automobile north on Downing street. At the intersection of East Eighth Avenue and Downing street a collision occurred, the Hungerford car running into the side of the Castanie automobile. Plaintiff was injured and instituted her action against Hungerford and Castanie, alleging

that each of the defendants was driving his automobile "in a careless, negligent and reckless manner and with a wilful and wanton disregard of the rights and safety of others and particularly of the plaintiff." Defendant Hungerford answered denying negligence on his part and invoked the guest statute. '35 C.S.A., c. 16, §371. Defendant Castanie by his answer denied negligence on his part and alleged that plaintiff's damages were the proximate result of the negligence of Hungerford, or the result of an unavoidable accident.

A jury was impaneled and at the conclusion of plaintiff's evidence, counsel for the respective defendants made motions for dismissal of the action. Counsel for Hungerford based their motion on the ground that plaintiff was a guest of Hungerford and that there was no evidence to take the case out of the guest statute. Counsel for Castanie grounded their motion on the contention that there was no evidence of negligence on the part of their client and that the negligence of Hungerford was the proximate cause of the accident. These motions were granted and the action was dismissed. Plaintiff Eberle brings the cause here by writ of error.

On the evening when this accident occured it appears that one Mabel Valentine, an amateur entertainer, desired to go to Fitzsimons General Hospital to assist in entertaining patients. She was "keeping company" with defendant Hungerford and asked him to take her to the hospital. A musical instrument belonging to Mabel Valentine was at the home of plaintiff Eberle (who also was an amateur entertainer) and as she (Mabel Valentine) desired to pick it up, Hungerford and Mabel Valentine went to plaintiff Eberle's home and plaintiff rode out to the hospital with Hungerford and his companion in the Hungerford automobile rather than go out in a Red Cross car.

After the entertainment of patients and on leaving the hospital, Mabel Valentine was seated in the middle of the front seat while Hungerford drove his car. Plaintiff

Eberle was on the right-hand side of the front seat of the vehicle. Plaintiff Éberle testified that shortly before the accident Hungerford attempted to put his arm around Mabel Valentine, who "pulled it over her shoulder" and said to Hungerford, "Put it on the wheel where it belongs." There is no claim that either Hungerford's car or Castanie's automobile was being driven at more than normal speed at the time of the accident. The accident occurred eight feet south of the north curb line of East Eighth Avenue and in the center of Downing street. There is an electric traffic control signal at this intersection. It is admitted that the "red" light of this traffic control signal on the side of Eighth Avenue along which Hungerford was traveling was not operating, although the green and amber lights on this signal were functioning. The traffic control light on the southeast corner of this intersection was operating.

Both Hungerford and Castanie were called by plaintiff as adverse witnesses. Castanie said he went through the intersection on the green light. He said he saw the Hungerford car as the latter passed the crosswalk about four or five feet, which he said was the point at which Hungerford should have stopped.

Hungerford testified that he was driving toward Downing street along East Eighth Avenue and that the traffic light was green as he neared the intersection and that it turned to amber "just about the time I hit the cross-walk." He also said he did not see Castanie's car until it "was practically in front of me," and that the light was still amber at the time of the collision. Mabel Valentine did not testify.

■ There was evidence on the part of plaintiff that just before the collision Mabel Valentine said "red light." Plaintiff also testified that she gave two dollars to Hungerford "on the way out" to Fitzsimons hospital. Her counsel state, "There is serious doubt whether the guest passenger statute has any application to this case since the plaintiff paid Hungerford two dollars toward the ex-

pense of the trip." A careful examination of the record discloses that plaintiff Eberle was a guest within the meaning of the statute. Hungerford was taking his lady friend to the hospital and as a social gesture invited plaintiff Eberle to accompany them and there is evidence that plaintiff Eberle after the trip started insisted that Hungerford take two dollars "to help on gas." The gratuitous purchase of gasoline does not constitute the transportation one for hire or change the relation from that of a gratuitous guest. *Guiney v. Osborn,* 295 Mich. 559, 295 N.W. 264; *Morgan v. Tourangeau,* 259 Mich. 598, 244 N.W. 173; *Starkweather v. Hession,* 23 Calif. App. (2d) 336, 73 P. (2d) 247.

We, therefore, conclude that plaintiff Eberle was a guest and the liability of Hungerford must be predicated on more than ordinary negligence in order to take the case out of the guest statute; hence, the burden was upon plaintiff to prove that the accident was due to wilful and wanton disregard of the rights of others, in accordance with our holding in *Pettingell v. Moede,* 129 Colo. 484, 271 P. (2d) 1038, decided June 14, 1954.

Counsel for plaintiff Eberle asserts that *Schlesinger v. Miller,* 97 Colo. 583, 52 P. (2d) 402, is controlling. We think not. There the evidence was that the driver was driving at an excessive speed on a city street; that he had been repeatedly warned by his passengers of the danger incurred by reason of his conduct; that he paid no heed to these warnings but "just laughed" and that after the accident, he requested two of his passengers to say nothing about the fact that he was driving with one hand. In that case it was evident that defendant was driving with one hand at the time of the accident and that "just a split second before the crash" he had his right arm about his companion and was engaged in kissing her. In the instant case, according to the testimony of plaintiff Eberle herself, Hungerford drove "all right" all the way out to the hospital and on the way back. His car stopped in the intersection at approximately the

172

point of impact and was still on Hungerford's right side of the street.

There is no evidence in this record that Hungerford did not have both his hands on the wheel of his car at the time he entered the intersection. Plaintiff testified that his gesture toward embracing Mabel Valentine occurred "a few minutes before the crash." The facts in this case at best constituted only simple negligence on the part of Hungerford and not wilful and wanton disregard of the rights of plaintiff. *Klatka v. Barker*, 124 Colo. 588, 239 P. (2d) 607.

■ In the instant case, because of the provisions of our guest statute and the fact that plaintiff Eberle did not by evidence take herself out of the category of a guest, the trial court properly sustained Hungerford's motion to dismiss at the conclusion of plaintiff's case. Where damages cannot ·be legally recovered, it is not error to grant such a motion.

We therefore conclude that the trial court did not err in sustaining the motion for dismissal made by counsel for Hungerford, there being no evidence on which his liability could be predicated.

The city traffic engineer testified that the electric traffic signals at this corner were timed so that when the green light went out, the amber light came on for three seconds, and during this interval the red light facing the crossing lane of traffic was still on. At the end of this three second period the red light changed directly to green and the amber light changed to red. Stated otherwise, when there was an amber or green light on one street, the light for the other thoroughfare was red.

■ There being no dispute as to the point of impact, it is evident that the Castania car had traveled three-fourths across the intersection before the impact. Castanie said he went through on the green light; Hungerford admitted that he proceeded further into the intersection on the amber light. If we are to accept Hungerford's version of what happened and recall the testimony

of the city traffic engineer, then Castanie went into the intersection on a red light. It was incumbent upon the jury to determine from all the evidence in the case which of these two drivers was telling the truth. It is evident that during the three-second interval, assuming that the light was amber when Hungerford went into the intersection, he would have proceeded further than the approximate center of Downing street. Obviously it would have taken Castanie more time for his car to cross the intersection and into the path of Hungerford's vehicle, as both cars were traveling at about the same speed. Castanie testified that the green light was on for some hundred to one hundred fifty feet before he reached East Eighth Avenue and that it was still green when he went through the intersection. This testimony was in direct contradiction to that given by Hungerford.

■ Putting the matter concretely, we must say that if Castanie's testimony is to be believed, Hungerford ran a red light; if Hungerford's testimony is to be believed, Castanie ran a red light. This presented an issue of fact. Here the trial judge sustained the motion to dismiss plaintiff Eberle's complaint in spite of the fact that there was evidence from which it might be concluded that Castanie was negligent. If the jury on a consideration of the entire case should conclude that Castanie was negligent and that such negligence was the proximate cause of the accident in which plaintiff Eberle was injured, she would be entitled to a verdict in her favor. Where the evidence presents a controverted issue of fact, it is error for the trial court to direct a verdict or dismiss the action.

■ A motion for dismissal or for a directed verdict admits the truth of plaintiff's evidence and every inference of fact that can legitimately be drawn therefrom. *Baldwin Star Coal Co. v. Quinn,* 46 Colo. 590, 105 Pac. 1101; *Mulford v. Nickerson,* 76 Colo. 404, 232 Pac. 674.

We quote from *Denver City Tramway Co. v. Wright,* 47 Colo. 366, 107 Pac. 1074: "The motions for directed

verdicts and for nonsuit were also properly denied. What constitutes negligence and reasonable care is a question for the court, but whether the facts relied upon to show either have been proved is for the jury. In the determination of such matters all disputed facts are to be decided in favor of the plaintiff, and all presumptions and inferences favorable to him, which the evidence warrants, must be accepted as true. *Nichols v. Chicago B. & Q. R. Co.,* 44 Colo. 501, 98 P. 809."

The judgment of the trial court in dismissing the action as against defendant Hungerford is affirmed; the judgment of dismissal as to defendant Castanie is reversed and the cause remanded for further proceedings in harmony herewith.