No. 20,226.

J. D. MEARS *v.* BERNARD KOVACIC.
(381 P. [2d] 991)

Decided May 27, 1963.

Mr. THATCHER L. SHAW, for plaintiff in error.

Messrs. HELMAN, YOUNGE, HOCKENSMITH & STACEY, for defendant in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

In his complaint Mears alleged that while riding "as a paying passenger, and not as a guest," in a vehicle being driven by one Kovacic he suffered personal injuries and other resultant damages in a total amount of $15,850 as the direct and proximate result of Kovacic's driving misconduct, which was characterized as not only negligent and careless but as reckless and willful and wanton.

By answer Kovacic denied that he was in anywise negligent or reckless and affirmatively pled C.R.S. '53, 13-9-1, commonly known as the Guest Statute, which provides in part as follows:

"GUEST HAS NO CAUSE OF ACTION. — No person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his intoxication, or by negligence consisting of a willful and wanton disregard of the rights of others."

Upon trial to a jury at the conclusion of Mears' presentation of evidence the trial court granted Kovacic's motion to dismiss and entered an appropriate judgment dismissing Mears' claim. Motion for new trial was duly filed, argued and denied and by the present writ of error Mears seeks reversal of this judgment.

In dismissing the claim the trial court held that Mears' own evidence affirmatively showed as a matter of law that he had no claim against Kovacic because of the prohibition contained in C.R.S. '53, 13-9-1. In other words, the trial court held as a matter of law that at the time of the accident Mears was riding in Kovacic's automobile "as his guest, without payment for such transportation," and further that Kovacic's act of driving off the edge of U. S. Highway No. 6 and into Clear Creek near Silver Plume, Colorado, at 10:30 o'clock P.M. on a winter night in a severe snowstorm was neither "inten-

tional . . . or caused by intoxication, or negligence consisting of willful and wanton disregard of the rights of others."

The main thrust of Mears' argument in this Court is that under the evidence he had established, prima facie, that he was not a guest — but a paying passenger — in Kovacic's car during the ill-fated trip from Grand Junction to Denver, and that the trial court erred in holding as a matter of law that he was a guest. It therefore becomes necessary to examine in some detail the evidence pertaining to Mears' status as he rode in Kovacic's automobile on this particular occasion.

Mears and Kovacic were both residents of Grand Junction and had been close friends for some fifteen years — such close friends that on February 28, 1961, at about 2 o'clock in the afternoon Mears asked Kovacic to drive him to Denver. The reason for this urgent request was that Mears had just learned that his wife, who was in Denver, was sick and accordingly he desired to see her at once and hoped to return her to Grand Junction. In connection with his request, Mears volunteered to pay Kovacic's expenses "if he would take me to Denver to get my wife and bring her back." When asked what expenses he had in mind, Mears replied: "All incidental expenses to the trip such as gasoline, oil, food, lodging." Although it was clearly established that Kovacic himself had no reason to go to Denver, he nevertheless agreed to aid Mears, and within one hour the two were headed toward Denver in Kovacic's automobile and with Kovacic at the wheel.

Before leaving Grand Junction Mears "borrowed a set of chains because Kovacic did not have any." Mears then bought and paid for a tank of gas in Grand Junction. A stop was made in Glenwood Springs, where Mears bought and paid for coffee. At Dillon, Mears bought Sandwiches for the two of them and also paid to have the chains put on the car. Shortly later, with Mears half asleep and "leaning back on the seat," Mears

testified that he felt the "car give a little, just slip a little bit and then it caught on the shoulder of the road and we went over . . . it happened fairly fast, and we were going a little fast . . . around 35 miles per hour."

On cross-examination Mears admitted that he hoped Kovacic would drive him to Denver because "he was a good friend." He then conceded that he did not contemplate payment to Kovacic of any sum for the depreciation of his car, was only going to pay him for "gas and oil and other expenses" and agreed that Kovacic was "not going to get any money out of this thing."

The foregoing is deemed to be a complete resume of all testimony bearing on the relationship between Mears and Kovacic, and the circumstances leading up to their proposed trip to Denver.

The general rules which determine this controversy are not in any great dispute, the difficulty arising as is so frequently the case when general principles are sought to be applied to a particular factual situation. So, in *Klatka v. Barker*, 124 Colo. 588, 239 P. (2d) 607, it was stated that in order to take a passenger out of the "guest" statute as the word is used in C.R.S. '53, 13-9-1, "the benefit conferred on the owner or operator of the car must be sufficiently real, tangible and substantial to serve as the inducing cause for the transportation." In that same case we cited with approval the following: " . . . to take a person riding with another out of the guest class two requirements are necessary: (1) an actual or potential benefit in a material or business sense resulting or to result to the owner, and (2) that the transportation be motivated by the expectation of such benefit."

Our attention has not been directed to any reported decision involving a factual situation on all fours with that of the instant case. Certain cases are similar, though, and the language contained therein is deemed helpful.

In *Loeffler v. Crandall,* 129 Colo. 384, 270 P. (2d) 769, it was said:

"Speaking of the special tangible benefit which must accrue to the driver of an automobile to take his passenger out of the "Guest" statute, the Supreme Court of California in *Druzanich v. Criley,* 19 Cal. (2d) 439, 107 P. (2d) 445, said: 'Where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given . . . The payment of a portion of the expense, as for gasoline and oil consumed on the trip, is merely incidental and does not constitute the moving influence for the transportation.' "

In *Eberle v. Hungerford,* 130 Colo. 167, 274 P. (2d) 93 it was declared that the gratuitous purchase of gasoline does not constitute the transportation of one for hire or change the relationship from that of a guest.

In *Riggs v. Roberts,* 74 Idaho 473, 264 P. (2d) 698 the Supreme Court of Idaho stated that "the courts have quite uniformly held that merely paying for gas and oil or sharing the payment for gas and oil is not in and of itself sufficient to establish passenger status," passenger status being therein defined as "one riding for compensation."

In *Bedenbender v. Walls,* 177 Kan. 531, 280 P. (2d) 630, the Supreme Court of Kansas, which state has a guest statute virtually identical to that of Colorado, declared the following:

"In determining the question whether a person is or is not a "guest" within the meaning of the statute, among the many elements to be considered are the identity and relationship of the parties; the circumstances of the transportation; the nature, type and amount of 'payment'; the benefits or advantages resulting to the respective parties growing out of the transportation; whether the 'payment,' of whatever nature, constituted a tangible benefit to the operator and was

the motivating influence for furnishing the transportation; and the nature and purpose of the trip.

\* \* \*

"With that as a basis, we think it may not be said the agreement by plaintiff husband to pay certain traveling expenses, such as gasoline and oil, was the motivating consideration or reason for defendant taking his car on the trip, notwithstanding the fact that after the trip had been commenced such payment by plaintiff did constitute a benefit to defendant owner in that he was thus relieved of making such expenditures himself.

\* \* \*

"The facts already have been related and will not be repeated. They clearly show a situation of common everyday experience to everyone—that of reciprocal hospitality and social courtesy between friends when the undertaking is for the mutual social pleasure of the parties concerned. There was no relationship of mutual benefit between or among them other than of a social nature. The payment of certain traveling expenses by plaintiff husband amounted to nothing more than the exchange of social amenities and did not transform plaintiffs' status into that of passengers 'for pay,' when, without such exchange, they would be guests, and consequently was not 'payment for such transportation' within the meaning of the statute. To hold otherwise would compel every host to dilute his hospitality and season it with the flavor of a bargain. The record presented supports only the conclusion that the sole purpose of the trip was the joint pleasure of the parties. Friendship and sociability were the basis of plaintiffs being in the car. In fact, we have no doubt but that at the time in question the parties would have resented any suggestion that their relationship was anything other than social and for mutual pleasure. One occupying the status of a guest should not be permitted to accept a gratuity under mental reservation, and, by a trifling reciprocity, convert it into a binding agreement having legal consequences."

Applying the foregoing to the facts and circumstances of the instant case, we conclude that the trial court committed no error when it determined that Mears as a matter of law was a "guest" in the Kovacic vehicle, as that word is used in C.R.S. '53, 13-9-1.

The one and only purpose to be served by this trip was to take Mears to Denver so that he could visit his sick wife. Because of a long and close friendship when Mears was confronted with an emergent personal problem, he sought out Kovacic and in effect asked a favor of him. Incidental to his request, Mears volunteered to pay Kovacic's out-of-pocket expenses to be incurred during the trip, and in our view this offer was much more in the nature of a social amenity than an offer to enter into a business contract. Mears' willingness to pay for "gas, oil, food and lodging" was certainly not a "benefit . . . sufficiently real, tangible and substantial to serve as an inducing cause for the transportation."

On the record before us, the "motivating influence" which lead Kovacic to be driving on a snow-covered mountain road in the middle of winter through a blinding snowstorm at 10:30 o'clock in the evening most certainly was not the profit motive or any expectation of financial betterment resulting from "payment [by Mears] for such transportation." Rather, Kovacic was impelled to make this journey because of his relationship with Mears and a concomitant desire to do a good turn for a friend who had a sick wife.

But for Mears' voluntary offering to pay for the gas, oil and other related expenses, there would be no doubt that he would have been a "guest" in the Kovacic vehicle and we are unwilling to hold that simply because Mears commendably wanted to do the very least thing the situation called for, i.e. to pay for or at least minimize Kovacic's out-of-pocket expense, he thereby converted himself from a guest into a paying passenger.

Having determined that Mears as a matter of law was

a guest in the Kovacic automobile, and there being no contention that Kovacic was guilty of anything more than simple negligence, at the very most, we conclude that the trial court acted correctly in its dismissal of Mears' claim.

The judgment is therefore affirmed.

MR. CHIEF JUSTICE FRANTZ dissents.

MR. JUSTICE DAY not participating.

MR. CHIEF JUSTICE FRANTZ dissenting:

I quote from the majority opinion:

" * * * In connection with his request, Mears volunteered to pay Kovacic's expenses 'if he would take me to Denver to get my wife and bring her back.' When asked what expenses he had in mind, Mears replied: 'All incidental expenses to the trip such as gasoline, oil, food, lodging.' Although it was clearly established that Kovacic himself had no reason to go to Denver, he nevertheless agreed to aid Mears, and within one hour the two were headed toward Denver in Kovacic's automobile and with Kovacic at the wheel."

Here was an offer and an acceptance; these created a contract of hire; all the elements of a binding contract were present. We cannot say, in relation to these circumstances, "this is no contract," and under other circumstances not involving an automobile, "this is a contract."

At the very least, this case should have been submitted to the jury on the question of whether a contract of hire had been entered into, under an instruction defining what a contract of hire under the law would involve.

For these reasons, I dissent.