John **LANGDON** and J. Owen Evert, Joint Guardians of William Matilainen, an Incompetent, Appellants (Plaintiffs below),

v.

**BALDWIN–LIMA–HAMILTON CORPORATION**, a Foreign Corporation, Appellee (Defendant below).

No. 3987.

Supreme Court of Wyoming.

March 10, 1972.

Robert R. Rose, Jr., and G. L. Spence, Casper, for appellants.

Redle, Yonkee & Arney, and Lawrence A. Yonkee, Sheridan, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

On October 7, 1964, William Matilainen, employed by Brasel & Sims Construction

Company as a cement finisher, was seriously injured by a bucket of cement that dropped when the wire cable which held the crane boom came loose. His guardians sued Baldwin-Lima-Hamilton Corporation for $1,003,000,[1] alleging, inter alia, in their complaint:

"Defendant was negligent in the manufacture and design of the above-described machine [a Lima Type 44 crane] in that the cable was attached to the spool with a deadend device connection or attachment utilizing a socket and wedge, which said device is but 70 percent efficient in the performance of its function in relationship to the efficiency and strength of the cable. That at the time the manufacturer designed the said above-mentioned equipment, there were available for use and equipment on such machines deadend devices of 100 per cent efficiency, which devices could have been provided by the manufacturer at small additional cost."

"In addition, the manufacturer, in the design and manufacture of this equipment, was negligent in using a deadend device which was latently defective and imminently dangerous, and which had less than a 100 per cent efficiency because said equipment was so designed that the device itself could not be readily inspected, hence, requiring the manufacturer to provide a device which was 100 per cent efficient for use at such place in such machinery."

"In addition to the foregoing specific allegations of negligence, the plaintiffs, in the alternative, will rely upon the doctrine of *res ipsa loquitur*."[2]

At the conclusion of the evidence, plaintiffs moved an amendment to conform the pleadings with the evidence, reciting various charged negligence, including failure to take certain protective steps such as investigating and testing, as well as warning and instructing.

The case, tried by a jury, lasted some ten days, with both litigants calling numerous witnesses, plaintiffs seeking to prove negligence and defendant countering in an attempt to show lack of fault. The jury found for defendant and plaintiffs have appealed, urging two errors: (1) that the court failed to give a requested instruction on res ipsa loquitur (literally, "the thing itself speaks"), reading in salient part:

"You are instructed that from the happening of the injury involved in this case, an inference may be drawn that a proximate, legal cause of the occurrence was some negligent conduct on the part of the defendant."

but instructed:

" * * * the mere fact that an accident occurred is not, in itself, sufficient to charge the defendant with liability."

(2) the court failed to give an instruction covering all of the issues involved in the lawsuit.

The crane in use at the time of the accident was a Lima Type 44, manufactured by defendant. It was equipped with a fifty-foot boom and a one-yard bucket, which was used to transfer concrete from trucks to the deck of a bridge being built by the contractor, Brasel & Sims; the boom was held by a five-eighth inch wire rope, denominated a boom hoist rope or cable. At one end, this cable winds about a drum and is then strung through a series of sheaves above the boom, and the other end is attached to the floor of the machine in a socket and wedge hitch, sometimes, in this case, termed a dead-end device. The function of the boom hoist rope is to provide a means of raising and lowering the boom in the operation of the machine and holds the boom. The total dead-end attachment consists of a bracket welded to the floor of

---

1. The ward had previously received Workmen's Compensation benefits as an employee of Brasel & Sims Construction Company.

2. Plaintiffs also included a cause of action for breach of warranty but subsequently withdrew that theory.

the machine, the socket being secured to the bracket with a large pin and cotter key. The end of the rope passes around a wedge, and if they are properly seated, they are drawn tightly into the socket when a load is put on the hoist rope, the socket and wedge merely being a means of holding or securing the end of the cable. From time to time it was necessary to install another cable; and two Brasel & Sims employees had, just a week or two prior to the accident, changed the cable.

After the accident, the end of the cable supposed to be secured by the dead-end device was outside the machine. It had been flattened somewhat, but the employee who first observed it did not recall any strands being broken. When the employee went inside the machine, he found the socket portion still hooked onto the floor of the crane, and the wedge lying on the floor below the socket installation. At the lower portion of the wedge "there was a mark of the cable having went past * * * the wedge along across the side of the wedge" but there were no other scratch marks on it, and both it and the socket appeared to be in good condition. The cable was re-threaded after approximately two feet from the end had been cut so that everything would be straight cable; and after all the parts were reattached, they functioned properly.

In addressing themselves to the first charge of error, plaintiffs, notwithstanding the lengthy trial at which copious evidence was presented to show defendant's negligence by reason of faulty design, urge that this case presents the kind of a proof-problem which automatically denies recovery to an injured nonnegligent plaintiff unless the inference of negligence can come to his aid. In developing the need and propriety for this view, they recognize

the validity of the various decisions of this court which have enunciated the limitations of the doctrine sought to be here invoked. These were succinctly stated in Rafferty v. Northern Utilities Company, 73 Wyo. 287, 278 P.2d 605, 611: (1) the apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction inspection, or user; (2) both inspection and user must have been at the time of the injury in the control of the party charged;[3] (3) the injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. To a similar effect are the holdings in North Central Gas Company v. Bloem, Wyo., 376 P.2d 382, 384, and Stanolind Oil & Gas Co. v. Bunce, 51 Wyo. 1, 62 P.2d 1297, 1301–1302.

Naturally the first step in an analysis of the plaintiffs' argument is to ascertain whether the circumstances of the instant case are within the established limitations. No one would seriously question that the first requirement for application of the res ipsa loquitur doctrine is met, that is, in the ordinary instance no injurious operation would be expected from the device unless from a careless construction, inspection, or user. Similarly, the third requirement is obviously satisfied because for all that the evidence shows the injurious occurrence would have happened irrespective of any voluntary action by Mr. Matilainen. However, the second requirement is not thus easily disposed of. It is patent and undisputed that the crane, including the blamed dead-end device, was in the actual control of Brasel & Sims Construction Company and its employees, with no immediate control whatever in defendant. Plaintiffs seek to bridge this gap by saying on the basis of common experience it must be rec-

---

3. This has also been stated as requiring that "the defendant must have the exclusive control of injuring agency." However, as Professor William L. Prosser has observed, the requirement as it is generally applied is more accurately stated as one that the evidence must afford a ra-

tional basis for concluding that the cause of the accident was probably such that the defendant would be responsible for any negligence connected with it. 37 Cal.L. Rev. 183, 201; 2 Harper and James, Law of Torts, p. 1086 (1956).

ognized that a bucket at the end of a cable on the end of a crane does not fall free and out of control unless there is negligence on somebody's part and further insist the device was improperly designed and that in negligent design cases "inspection," "user," and "construction" merge as one duty and responsibility. They cite the case of Robinson v. Nightingale, 188 Kan. 377, 362 P.2d 432, as "unusually analogous" to the matter before this court; however, an analysis of Robinson discloses that it is not only distinguishable but the situation was entirely dissimilar.[4]

We are fully cognizant of the complexities and ramifications relating to the res ipsa loquitur doctrine and the difficulties which courts have encountered in its application or rejection, including procedural questions. Bearing these in mind as we examine the instant matter where the evidence indicated that the immediate cause of the accident was the failure of the dead-end device to hold the end of the cable and the probable cause of that failure was either the improper seating of the cable in the device by the Brasel & Sims' employees or an innate deficiency in the device, where plaintiffs presented detailed and extensive evidence pertaining to the latter, and defendant introduced evidence concerning the subject crane, which it had manufactured and shipped some seven years before Mr. Matilainen's accident, and the conformity of the socket and wedge device to the standards of the industry, we are unconvinced that the court erred in refusing to instruct on res ipsa loquitur. Additionally, we are impressed with the cases[5] of which Brunner v. Van Hoof, 4 Wis.2d 459, 90 N.W.2d 551, 554, is illustrative, holding that where plaintiff's evidence of specific negligence is sufficient to raise an issue for the jury or to make a prima facie case, the doctrine is not applicable:

" * * * The width and breadth of res ipsa loquitur from the strict to the liberal rules are extensively annotated in 33 A.L.R.2d 793 et seq. Under the authorities adopting the strict rule no specific acts of negligence can be shown without precluding reliance upon the doctrine. Under the liberal rule * * * [followed in Wisconsin], the doctrine may be applied in cases where evidence of specific negligence is introduced. * * * But under the liberal rule there is a point beyond which sufficient specific acts of negligence rule out the availability of the doctrine of res ipsa loquitur. When specific acts of negligence are shown making a prima facie case by the plaintiff and the inference of negligence is met and overcome by the evidence on the part of the defendant the doctrine of res ipsa loquitur is not applicable. * * * "

As to plaintiffs' second charge of error, that the court failed to give an instruction covering all of the issues in the lawsuit, it is asserted to have been agreed by the parties that, on the morning of the last day of the trial, counsel and court would consider an "issues instruction." However, plaintiffs now state that the next morning while their counsel was in the process of dictating such an instruction to the court reporter the judge informed him that having considered all of the submitted instructions the night before and finding the ones he had chosen to give to be adequate and to cover the issues and the law of the case he would not give an issues instruction.

4. In that case injury had occurred to plaintiff when an overhead portion of a hoist at a grain company fell, said hoist having been constructed and erected by two defendant contractors who had agreed to construct and erect the hoist from materials prepared and supplied by and upon some advice and instructions of defendant-appellant, whose contention was, when charged together with the other defendant contractors and the grain company, that no cause of action was alleged against it under the doctrine of res ipsa loquitur.

5. Annotation, 33 A.L.R.2d 791, 803.

Plaintiffs now insist that the instructions which were given did not cover all of the issues and argue it to be the law of this State that the court has a duty to submit to the jury an instruction covering the parties' respective theories regarding the evidence submitted, citing Barber v. Sheridan Trust & Savings Bank, 53 Wyo. 65, 78 P. 2d 1101, 1109.

 Plaintiffs do not go far enough when they say a party to an action is entitled to have the jury instructed with reference to its theory of the case. As is implicit in the Barber opinion, this is true only when such theory is supported by competent evidence and instructions are properly requested.[6] Rule 51, W.R.C.P., provides, inter alia, "Before the argument of the case to the jury is begun, the court shall give to the jury such instructions on the law as may be necessary and same shall be in writing * * *." Rule 8, Uniform Rules, All District Courts of Wyoming, provides, "Requests for instructions other than those necessitated by unanticipated events during the trial, must be presented in writing to the Court prior to the commencement of the trial. *All additional requested instructions must be presented in writing in advance of the arguments.*" (Emphasis supplied.) Even though counsel was informed by the court that no further instructions would be given, if plaintiffs wished to later predicate a charge of error thereon, it was nevertheless necessary that they submit in writing desired instructions. The absence of such written instructions in the record with delineation which would make them meaningful render it impossible for a reviewing court to intelligently determine whether reversible error occurred. We, therefore, see no validity in this integrant of the appeal.

Affirmed.

6. Gillaspie v. Duncan, Wyo., 410 P.2d 577, 578; Shikany v. Salt Creek Transp. Co., 48 Wyo. 190, 45 P.2d 645, 647; Behr v.

McCoy, 138 Colo. 137, 330 P.2d 535, 538; 53 Am.Jur. Trial § 626; 88 C.J.S. Trial § 382.