**Robert Eric BROWN, Appellant (Plaintiff below),**

v.

**William A. RINER, Administrator of the Estate of Daniel D. Rothfuss, Appellee (Defendant below).**

**No. 4050.**

Supreme Court of Wyoming.

Aug. 29, 1972.

---

Bard Ferrall, Cheyenne, Harden & Napheys, Ralph B. Harden, and Charles Bloom, Fort Collins, for appellant.

Swainson & Swainson and W. A. Swainson, Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

This case arose out of a one-car crash about 1:30 a. m., September 16, 1967, into a traffic-light pole mounted on a circular concrete, traffic-light base (one foot six and three-quarters inches in height and five feet five inches in diameter) located approximately in the center of the intersection of Randall and First Avenues on Warren Air Force Base. Both the nineteen-year-old driver, Daniel D. Rothfuss, and a passenger were killed; two other passengers, one of whom is the plaintiff here, were injured. Plaintiff, alleging deceased's gross negligence, sued the estate for $78,488. At the resulting jury trial upon the conclusion of plaintiff's case, the court directed a verdict for defendant; plaintiff has appealed, charging as error the trial court's (a) taking the issue of plaintiff's guest status from the jury and (b) refusing to allow the issue of negligence, gross or otherwise, to be decided by the jury.

The facts as to the occurrences immediately prior to the crash are indeed meager. The circumstances leading up to it, and apparently from the defendant's recitation in the brief thought by him to be relevant, are rather copious. Brown and Rothfuss, residents of Fort Collins, Colorado, had arranged by telephone for dates with Mona Brown and Sylvia Collins, who lived on Warren Air Force Base. For the past year Rothfuss and plaintiff had been coming up together several times a month; their practice had been to share costs (in-

cluding oil, gas, and the 3.2 beer they would take with them)—one driving his automobile one week and the other his the following week—the purposes of the visits to Cheyenne being essentially social, each man paying his own way.

On September 15, 1967, they drove to Cheyenne where they picked up the girls about 7:30 or 8 p. m. at Miss Collins's Warren Air Force Base address. After some stops they proceeded to a motel room where beer and wine were consumed while they watched television for several hours, leaving the premises and returning to the Base at approximately 1:30 a. m., September 16. At the time of the accident, Rothfuss was driving; Miss Collins was in the front seat with him; plaintiff and Miss Brown were in the rear seat. They stopped to procure a pass at the Base, deceased passing a beer can back to plaintiff just before they reached the visitor's center. They drove north for less than a block; then west on a side road running parallel to Randall Avenue for about a block; turned left and proceeded southerly, stopping at a stop sign; then about two hundred and fifty yards (two and a half blocks) from Randall and First, the scene of the accident, turned right onto Randall (sixty feet in width) and proceeded westerly at thirty to thirty-five miles per hour in a thirty-mile zone. The night was clear and the pavement dry. As the automobile approached the intersection and impact point, the deceased did not slow his vehicle. It struck the pole on which the signal light was mounted, bouncing back one foot, ten inches. The automobile had extensive front-end damage. The engine block was pushed through the firewall into the front seat, and the steering column broke, bending and shattering the windshield. The speedometer was stuck at approximately thirty-four miles per hour. Rothfuss and Miss Collins were killed; plaintiff and Miss Brown suffered multiple injuries and neither recalled anything regarding the crash except Miss Brown said she did not

feel the car braking or slowing at any point before impact, that Rothfuss seemed to be driving fine, there being no mention of anything concerning his driving.

Plaintiff argues at some length for application of the policy set out in 1 A.L.I. Restatement, Conflict of Laws 2d, §§ 145 and 146 (1971), essentially that:

"The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties * * *."

While recognizing that in the instant case Wyoming law must apply to the standard of care required of defendant (this State's interest in the manner in which its highways are used and the care exercised by drivers being paramount) and that accordingly the degree of negligence to be applied in determining liability must be "gross negligence," plaintiff submits this court would be remiss in looking only to Wyoming law in determining the question of whether a host-guest relationship was established by the plaintiff and defendant, arguing that since the "relationship itself" and the "basis of its formation" were entered into in Colorado that State had the only significant contact therein.

In view of the fact that our adoption of the principle enunciated in 1 A.L.I. Restatement, Conflict of Laws 2d, supra, would be a repudiation of the position heretofore taken by this court,[1] and that this was not a matter raised before the trial court, it does not appear an appropriate argument for plaintiff at this time. However, even assuming arguendo that we should adopt such an approach, it would not produce a different result. Plaintiff cites Burgoyne v. Robinson, 28 Colo.App. 467, 474 P.2d 188; Eads v. Spoden, 172 Colo. 231, 472 P.2d 131; Houghtaling v. Davis, 140 Colo. 327, 344 P.2d 176. These cases, however, are quite different factually from the present situation;

1. Ball v. Ball, 73 Wyo. 29, 269 P.2d 302, 304.

and in Mears v. Kovacic, 152 Colo. 362, 381 P.2d 991, 993, where the trial court's holding as a matter of law that the passenger was a guest was challenged, the supreme court made it clear that in order to take a person riding with another out of the guest class two requirements are necessary: (1) an actual or potential benefit in a material or business sense resulting or to result to the owner, and (2) that the transportation be motivated by the expectation of such benefit. It is, of course, generally recognized that the giving of compensation within the meaning of guest statutes does not necessarily prevent the rider from being regarded as a guest. 5 Blashfield, Automobile Law and Practice § 212.15 (1966). We see no merit in plaintiff's first argument.

Passing to whether the court erred in refusing to allow the issue of negligence, gross or otherwise, to be decided by the jury, it is implicit from our previous discussion that here plaintiff was Rothfuss's guest. Accordingly, it was necessary for plaintiff to prove gross negligence in order to recover.[2]

Plaintiff argues that in view of Rothfuss's drinking, the speedometer stopping forever while registering thirty-four miles per hour, and his driving into the plainly visible abutment, there was evidence "to support the conclusion that defendant was guilty of reckless driving in that his destination was straight ahead and then to the right of the four-lane Randall Avenue while his car struck the abutment at a bizzare [sic] angle suggesting that the car was neither in the right lane, the left lane, nor the left turn lane, but in no lane and every lane."

Defendant points to the fact that there is no testimony as to how much Rothfuss drank and that to submit the case to the jury would have required it to speculate as to how the accident occurred.

It is true that aside from plaintiff's statement that Rothfuss drank four beers en route to Cheyenne there was no exact delineation of what he consumed that evening. However, Miss Brown testified they were all drinking during the time they were at the motel—she and the plaintiff beer, Miss Collins and Rothfuss wine, and maybe beer also. Plaintiff said that most of the case of beer was consumed and that Rothfuss and Miss Collins drank about a quart of wine.

While mere conjecture is never sufficient to establish liability on the part of a defendant, or otherwise stated, no inference of negligence can be based on mere surmise, guess, speculation, or probability,[3] gross negligence is generally a question of fact for the jury or for a trial court sitting without a jury, it becoming a question of law only when it is clear that but one conclusion can be drawn.[4]

In Cederburg v. Carter, Wyo., 448 P.2d 608, 610, where defendant was driving fast enough that he was unable to make a curve, and despite a street thirty-six feet three inches wide, went outside it to his left over the curb, striking a utility pole near the center of the front of the car with sufficient force to break the pole, we held a story of negligence was told to such an extent that a trier might reasonably find such negligence to be gross negligence.

Where in this litigation there was evidence of exceeding the posted speed limit, driving into a traffic-light pole with great force, and Rothfuss in utter disregard of the statutes of this State, making it a mis-

---

2. Section 31-233, W.S.1957, C. 1967, so far as relevant here provides, "No person transported by the * * * operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such * * * operator for injury * * * in case of accident, unless such accident shall have been caused by the gross neg- ligence * * * of the * * * operator * * *."

3. Gerdom v. Gerdom, Wyo., 444 P.2d 34, 37, and cases cited therein.

4. Severin v. Hayes, Wyo., 372 P.2d 1017, 1020; McClure v. Latta, Wyo., 348 P.2d 1057, 1062.

demeanor to even have alcoholic beverages in his possession,[5] brought beer from Colorado into the State, consuming probably four bottles en route, drinking wine purchased in Cheyenne, and having a can of beer in his hand as he entered the Base just before the accident, we are unwilling to say that only one conclusion could be drawn therefrom, i. e., that there was at most merely evidence of ordinary negligence.

■ Even where a single act of negligence might not constitute gross negligence, gross negligence may result from the several acts. Carley v. Meinke, 181 Neb. 648, 150 N.W.2d 256, 259–260; Doherty v. Spano, 336 Mass. 576, 146 N.E.2d 671, 672.

Viewed in the light most favorable to plaintiff the evidence discloses several acts of negligence by deceased and whether or not gross negligence was established was a matter for the jury; accordingly, the judgment is reversed and the cause remanded.

Reversed and remanded.

GUTHRIE, Justice (dissenting).

I must dissent in this case. It is my impression that the majority of the court has been influenced by the fact an accident occurred with horrible and tragic results.[1] It is my view this decision is contrary to our oft-repeated rule that speculation, conjecture, or guess can never be the basis for

liability[2] as set out in the majoirty opinion. In arriving at this result the court has introduced the doctrine of res ipsa loquitur or some species thereof into our law insofar as it affects motor vehicle accidents, or has said this rule is in effect except in certain circumstances. It is suggested by this writer that it is unfair to litigants, trial lawyers and trial courts generally not to fully explain and note such modification if it is to be made.

There is no occasion for a reiteration of the factual situation herein but in the writer's view there is complete absence of any evidence which suggests any definite cause for this accident.

In consideration of this case it is my view that the "no eye witness" rule is applicable herein because the survivors are suffering from amnesia or memory loss and there is no person who could testify as to what happened immediately before or at the time of the accident.[3] This rule which creates a presumption that the deceased was exercising due care in preservation of his life and the well-being of others has been recognized by this court.[4] It has even been held that in the absence of convincing evidence to the contrary it will be presumed a deceased person exercised reasonable care.[5] If we are to depart therefrom this exception should be explained. In addition thereto it may be suggested there is a further presumption arising from the former-mentioned rule in favor of a

---

5. Section 12–33(c), W.S.1957 (1971 Cum. Supp.), provides that "Any person under the age of twenty-one * * * who has any alcoholic or malt beverage in his possession or who is drunk or under the influence of intoxicating liquor * * * or malt beverages, on any street or highway or in any public place is guilty of a misdemeanor."

1. See Langdon v. Baldwin-Lima-Hamilton Corporation, Wyo., 494 P.2d 537, 538, where an instruction was given stating in substance the mere fact an accident happened raised no question of negligence and was urged as error. Also, 29 Am.Jur.2d Evidence, § 211, p. 262, n. 11.

2. Gerdom v. Gerdom, Wyo., 444 P.2d 34, 37.

3. Spry v. Lamont, 257 Iowa 321, 132 N.W. 2d 446, 448; Plumb v. Minneapolis and St. Louis Railway Company, 249 Iowa 1187, 91 N.W.2d 380, 385; Schultz & Lindsay Construction Company v. Erickson, 8 Cir., 352 F.2d 425, 434–435; 22 Am.Jur.2d Death, § 216, p. 762.

4. Gish v. Colson, Wyo., 475 P.2d 717, 720; Culver v. Sekulich, Wyo., 344 P.2d 146, 154; Wilhelm v. Cukr, 68 Wyo. 1, 227 P.2d 988, 991, rehearing denied 230 P.2d 507, 508; and in addition see 29 Am.Jur. 2d Evidence, § 211, p. 262.

5. Drake v. Moore, 184 Kan. 309, 336 P.2d 807, 812.

deceased defendant that he was not violating the speed limit at the time of the accident.[6]

I am disturbed by the statement in this opinion quoting plaintiff's argument that there was evidence "to support the conclusion that defendant was guilty of reckless driving in that his destination was straight ahead and then to the right of the four-lane Randall Avenue while his car struck the abutment at a bizzare [sic] angle suggesting that the car was neither in the right lane, the left lane, nor the left turn lane, but in no lane and every lane." Counsel supports this unique statement by reference to Exhibit 1, which is a rough plat showing the car drove directly into the abutment in a straight line with no indication or attempt to show that it occupied or was driven in any other course or lane. This exhibit was drawn by plaintiff's witness Ortega, who did not testify to any such facts, and shows no suggestion of a "bizarre angle" nor that it was not "in the right lane, the left lane, nor the left turn lane, *but in no lane and every lane.*" (Emphasis supplied.) Strangely, shortly following the quoted statement appellant's brief contains the following:

"* * * there is evidence and testimony that the automobile did not brake, slow down or *swerve* but smashed into the clearly visible abutment * * *." (Emphasis supplied.)

It is difficult to reconcile these arguments and demonstrably improper, in my view, to repeat them in the opinion.

The majority bases its finding upon three elements:

1. Evidence of exceeding the posted speed limit.

2. Driving into the traffic-light pole with great force.

3. The fact that the deceased was violating statutes of this state making it a misdemeanor to have alcoholic beverages in his possession, having brought beer from Colorado into the state and having a can of beer in his hand as he entered the base just before the accident and having consumed some beer.

In the writer's view the evidence of exceeding the posted speed limit is of little consequence, as its relationship to the cause of this accident is totally unexplained. In addition thereto the only competent evidence with regard to speed is that the car was being driven between 30 to 35 miles per hour but in a careful and prudent manner within 350 feet of the point of the accident. There is mention made of the speedometer being stuck at a point indicating a speed of 34 miles per hour. There is no evidence that the speed at which a speedometer stops is indicative of the speed at the time of the accident, and the writer refuses to take judicial notice thereof. If this be a fact, it might be a *proper subject of testimony and if we* are to suggest conjecture, as I feel the majority has done, it might be suggested that upon impact the needle might have been caused to gyrate wildly, stopping when some object obstructed it in its further flight. This is certainly a proper burden upon the plaintiff.

The driving into the traffic-light pole with great force is inexplicable and in my view carried little probative weight other than that was the cause of the injuries, particularly in light of the presumption of care which I have heretofore mentioned. There is no evidence that the damage to the car was caused by excessive speed or the speed of the car at impact. If this were probative this too is plaintiff's burden.

In the absence of any testimony that the drinking had affected the driving of the deceased, and the fact is there is affirmative showing in the plaintiff's case it had not, a suggested violation of this statute is immaterial. The possession was solely evidence of a violation of that law alone. The car might have contained an unregistered machine gun or the proceeds of a

6. Snider v. King, Mo.App., 344 S.W.2d 265, 277.

bank robbery—all in violation of a statute, but certainly with no probative force as applied hereto. A statutory violation can not be material unless there is other evidence that violation of this statute was the proximate cause of the accident.[7]

It may be suggested, too, that we have heretofore held that excessive speed does not constitute gross negligence nor does mere momentary inattention constitute gross negligence,[8] although speed may become so *excessive* that it constitutes willful misconduct or gross negligence,[9] an element missing in this case.

Although denying the propriety of speculation, I believe it can be illustrated there is no evidence of negligence of any character in this record and that it shows a completely inexplicable accident; that the cause could be resolved only in the minds of the fact finders based upon their guess and speculation. It might be suggested that a jury believing the plaintiff was entitled to recovery could speculate and guess that the driver was angry with himself or some of the occupants and deliberately drove into the obstruction; that although there is no evidence affecting this he became momentarily paralyzed from the consumption of the alcoholic beverages. Fact finders not believing plaintiff was entitled to recovery could speculate that the steering mechanism had suddenly locked; some strange and hostile insect had alighted and bitten him on the tip of the nose, blinding him; that his driving was interfered with by passengers. These are but a few of the possibilities of a selection of "goodies" for rampant guesses.

The case of Cederburg v. Carter, Wyo., 448 P.2d 608, is factually different, there being evidence of speed from 50 to 70 miles per hour and it being demonstrated and admitted this speed was the cause for loss of control and leaving the road. It might be considered this is illustrative of the case wherein speed may be evidence of such negligence.

Because this will have no value as precedent no exhaustive discussion or citation has been attempted. It is my view from the facts and authority cited that plaintiff failed of his burden and the judgment should be affirmed.

---

7. Checker Yellow Cab Co. v. Shiflett, Wyo., 351 P.2d 660, 663.

8. Moore v. Kondziela, Wyo., 405 P.2d 788, 789.

9. Meyer v. Culley, 69 Wyo. 285, 241 P.2d 87, 94; Norfolk v. State, Wyo., 360 P.2d 605, 608.