**Irving J. HOROWITZ, as administrator and personal representative of the Estates of Bruce S. Horowitz, Catherine O. Horowitz, and Michael A. Brandon Horowitz, Deceased, for and on Behalf of Brian Scott Horowitz, Plaintiff,**

v.

**SCHNEIDER NATIONAL, INC., a Nevada corporation, Schneider National Leasing, a Nevada corporation, Schneider National Carriers, Inc., a Nevada corporation, Schneider Transport, Inc., a Wisconsin corporation, and Schneider Tank Lines, Inc., an Illinois corporation, Defendants.**

No. C88–0100J.

United States District Court, D. Wyoming.

March 3, 1989.

**1574**

Guy, Williams, White & Argeris, Cheyenne, Wyo., for plaintiff.

Branney, Hillyard, Kudla & Lee, Englewood, Colo., Sullivan and Zunker, Cheyenne, Wyo., for defendants.

### ORDER ON SUMMARY JUDGMENT RELATING TO PUNITIVE DAMAGES

JOHNSON, District Judge.

*Conflict of Laws*

■ In diversity actions, a federal district court must apply the substantive law of the state in which it sits. *Vandeventer v. Four Corners Electric Company, Inc.,* 663 F.2d 1016, 1017 (10th Cir.1981) (citations omitted). In determining the applicable substantive law, courts use that state's conflict-of-laws rules. *Dworkin v. Hustler Magazine, Inc.,* 647 F.Supp. 1278, 1281 (D.Wyo.1986) (citing *Klaxon v. Stentor Electric Manufacturing Company,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). These standards lead this court directly to an inquiry into the Wyoming choice of law rules.

#### A. Wyoming Choice of Law Rules

In *Ball v. Ball,* 73 Wyo. 29, 269 P.2d 302 (1954), a father took his unemancipated minor son on an airplane flight. The father was a licensed aircraft pilot and owned the airplane. The airplane took off from the airfield at Lodgegrass, Montana, and crashed somewhere nearby in Montana. The father died in the crash and the son was hospitalized for one week in Sheridan, Wyoming. Through his natural mother as

next friend, the son filed suit against his father for various acts of negligence. Although the father held an aircraft insurance policy, the insurance company refused the son's demand for damages. In deciding that Montana law (as opposed to Wyoming law) applied to the suit, the court approvingly cited the following statements of law:

> Where an action is brought in one jurisdiction for a tort committed in another, the general rule is that all matters relating to the right of action are governed by the lex loci delicti. That law determines whether a person has sustained a legal injury.
>
> \* \* \* \* \* \*
>
> It is thoroughly established as a general rule that the lex loci delicti, or the law of the place where the tort or wrong has been committed, is the law that governs and is to be applied with respect to the substantive phases of torts or the actions therefor, and determines the question of whether or not an act or omission gives rise to a right of action or civil liability for tort, \* \* \*.

*Id.*, 269 P.2d at 304 (quoting 11 Am.Jur. p. 490, § 182; 15 C.J.S., Conflict of Laws, § 12, p. 897).

In *Brown v. Riner*, 500 P.2d 524 (Wyo. 1972), a car carrying two couples crashed into a traffic-light pole mounted on a circular concrete base on Warren Air Force Base. The two men had driven a car from Colorado for a date with the two women from Wyoming. The male driver and the female in the front seat were killed, and the man and woman in the back seat suffered multiple injuries. The male passenger sued the estate of the deceased driver. Because Wyoming law required a showing of "gross negligence," plaintiff sought to apply Colorado law under the "significant contact" test of the Restatement (Second) Conflict of Laws 2d. The court did not consider this argument because it was not raised before the trial court. It did recognize, however, that adoption of that test would be "a repudiation of the position heretofore taken by this court," citing *Ball*, 269 P.2d at 304. *Id.* at 526. This

decision removed any doubt that until Wyoming said otherwise it would apply a rule of lex loci delicti.

In *Duke v. Housen*, 589 P.2d 334 (Wyo. 1979), a young woman sued her former lover who had knowingly infected her with gonorrhea. Although the two had no sexual contact in Wyoming, the woman sued there as it was her former lover's residence. The trial judge rejected a statute of limitations claim, reasoning that the action accrued only upon discovery of the disease related adhesions. The jury returned a verdict for $300,000 in compensatory damages and $1,000,000 in exemplary damages. On review, the Wyoming Supreme Court observed that the case presented no conflict of law issue. *Id.* at 342. This was so in view of the legislature's enactment of a "borrowing" statute applying the statute of limitation of the jurisdiction in which the cause of action arose. Wyo.Stat. § 1-3-117 (1977). Even so, the court went out of its way to reaffirm the rule of lex loci delicti in Wyoming. *Id.* (quoting *Ball*, 269 P.2d at 304). The effect of the "borrowing statute" was to eliminate disputes as to whether a statute of limitations is substantive or procedural. *Id.* at 344.

In *Dworkin v. Hustler Magazine, Inc.*, 647 F.Supp. 1278, 1281 (D.Wyo.1986), this court reviewed the above Wyoming law and determined that "[i]n conflict of laws matters, Wyoming follows the First Restatement of Laws." *Id.* (citing *Duke*, 589 P.2d at 341, *Brown*, 500 P.2d 524; *Ball*, 269 P.2d 302). Under this rule of lex loci delicti, this court applied "the law of the state where the cause of action arose." *Dworkin*, 647 F.Supp. at 1281. Defendants argue that the rule of lex loci delicti does not prohibit Colorado law from governing on the issue of punitive damages.

In support of this argument, defendants cite a number of cases. The cases are offered for the proposition that "[m]ost courts in applying the modern choice of law rule to situations like the case now at bar, take the position that the decedent's domicile should control with respect to damages while the law of the state where the injury occurred controls with respect to liability."

Defendants' Brief in Support of Second Motion for Partial Summary Judgment at 10–11. For several reasons, the court agrees with plaintiff that the cited cases are not helpful here. First, they come from jurisdictions espousing a conflict of law rule other than lex loci delicti. Second, unlike this case, they involve situations in which *plaintiffs* seek compensation under laws other than those of the place of injury. Third, the cases involve claims for compensatory rather than punitive damages.[1]

■ When lex loci delicti is applied, both the right to recovery for wrongful death and the measure of damages is governed by the law of the state in which the wrongful death occurred. *See, e.g., Richards v. United States*, 285 F.2d 521, 525 (10th Cir. 1960) "[t]he law of the state in which the wrongful death occurred—not that in which the action was instituted—controls in respect to the maximum amount of damages which may be recovered." *See also Stoltz v. Burlington Transportation Company*, 178 F.2d 514, 515 (10th Cir. 1949).

■ Defendants request that this court reject lex loci delicti, citing a multitude of cases that have done so in favor of an interest analysis or Restatement Second approach. The court agrees that a majority of courts have migrated away from lex loci delicti but finds no indication that Wyoming chooses to do so. As recently as 12 January 1989, the Wyoming Supreme Court stated that "[i]n Wyoming, the law that governs substantive aspects of a negligence action is the law of the place where an alleged tort occurred." *V–1 Oil Company v. The Honorable Robert B. Ranck*, 767 P.2d 612, 616 (Wyo.1989). *See also Wessel v. MAPCO, Inc.*, 752 P.2d 1363, 1366 (Wyo.1988) (Wyoming's choice of law doctrine is lex loci delicti). Accordingly, the court will apply the rule of lex loci delicti and deny defendants' alternative motion to certify the question to the Wyoming Supreme Court. Even so, the court addresses defendants' arguments under other conflict of laws rules to demonstrate that the result remains the same.

**B. Suggested Approaches of Defendants**

**1. Interest Analysis**

■ The above disputes arose in this case because Wyoming and Colorado treat punitive damages differently in wrongful death suits. Wyoming law expressly permits these damages:

> The court or jury, as the case may be, in every such action [wrongful death] may award *such damages, pecuniary and exemplary*, as shall be deemed fair and just. Every person for whose benefit such action is brought may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort.

Wyo.Stat. § 1–38–102(c) (Supp. June 1987). (Emphasis added.) Colorado, on the other hand, does not allow such punitive damages:

> All causes of action, except actions for slander or libel, shall survive and may be

---

1. A case defendants describe as "very illustrative" of those offered in support of its position emphasizes each of these three differences. In *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967), two vehicles headed in different directions across the country collided, one from Ohio (a mother and son were killed) and one from California. Representatives of the deceased mother and son moved to California and later filed a wrongful death suit there. The conflict of laws question arose since Missouri (the place of the accident) limited wrongful death damages to $25,000 while neither Ohio (residence of decedents) nor California (forum and the residence of defendant and, later, plaintiffs representatives) had a limit. Writing for the California Supreme Court, Chief Justice Traynor applied Ohio law. Not bound by lex loci delicti, he found that Ohio had an interest in affording its citizens a full recovery. *Id.*, 63 Cal.Rptr. at 35, 432 P.2d at 731. He found that Missouri had no interest over how the plaintiffs were *compensated* (the case did not involve punitive damages). *Id.* at 34–5, 432 P.2d at 730–31. The case now before this court differs. First, Wyoming law is lex loci delicti. Second, the plaintiffs do not seek to increase their compensation by applying law other than the forum's. Instead, *defendants* seek to apply law other than the forum's (also the state in which the accident occurred) to *defeat* a claim for *punitive* damages.

brought or continued notwithstanding the death of the person in favor of or against whom such action has accrued, but punitive damages shall not be awarded nor penalties adjudged after the death of the person against whom such punitive damages or penalties are claimed: and, in tort actions based upon personal injury, *the damages recoverable after the death of the person in whose favor such action has accrued shall be limited to loss of earnings and expenses sustained or incurred prior to death* and shall not include damages for pain, suffering, or disfigurement, nor prospective profits or earnings after date of death. An action under this section shall not preclude an action for wrongful death under part 2 of article 21 of this title. Colo.Rev.Stat. § 13–20–101(1). *See Herbertson v. Russell,* 150 Colo. 110, 371 P.2d 422, 425 (1962) (damages for wrongful death in Colorado include compensatory damages but exclude exemplary damages); *Estate of Burron v. Edwards,* 42 Colo. App. 141, 594 P.2d 1064, 1065 (1979) (exemplary damages are not among those damages surviving the death of a personal injury plaintiff). Interest analysis involves examining how policies of each state would be advanced by applying its law.

The policy behind Colorado's disallowing punitive damages in wrongful death actions is to protect its citizens and insurance companies against excessive verdicts. In this case, no defendant was a Colorado resident or citizen. Because Colorado has no interest in denying such recovery to its citizens as against citizens of other states, the policy behind the Colorado law does not apply.

The policy behind Wyoming's allowance of punitive damages is not compensation of the victim as defendants seem to indicate. *Danculovich v. Brown,* 593 P.2d 187, 191 (Wyo.1979). Instead, such damages seek to publicly condemn some notorious action or inaction on the part of the defendant. The design of punitive damages is deterrence through public condemnation. *Campen v. Stone,* 635 P.2d 1121, 1123 (Wyo. 1981). As noted in *Brown v. Riner,* Wyoming has a paramount interest "in the manner in which its highways are used and the care exercised by drivers...." 500 P.2d at 526. By applying Wyoming law, Wyoming might better protect its citizens and others driving on its roadways.

2. Restatement (Second), Conflict of Laws § 145.

■ As defendants note in their brief, many states have adopted the Restatement 2d approach. Section 145 provides as follows:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second), Conflict of Laws § 6 provides the following choice-of-law principles.

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Under these guidelines, defendants contend again that Colorado law should apply as to punitive damages.

In support of this argument, defendants cite numerous contacts between the decedents, the accident, and Colorado: (a) the decedents resided in Colorado at the time of the accident and their resulting deaths; (b) decedents both were employed in Colorado at the time of their respective deaths; (c) the estates of the decedents were located in Colorado and are being probated there; (d) the beneficiary of this action was a resident of Colorado when any right to economic losses arising from this accident arose; (e) Irving J. Horowitz, administrator and personal representative of decedent's estates, was appointed by a Colorado court; (f) the effect of the judgment will be felt in Colorado; (g) the beneficiary of this action had guardians appointed pursuant to Colorado law; (h) decedents drove an automobile licensed and presumably insured in Colorado; (i) the lives of decedents were insured in Colorado; (j) the trip resulting in the accident originated in Colorado and was to end there; (k) the return trip of the tractor-trailer to its Oregon base began in Henderson, Colorado; (*l*) all other assets and liabilities of decedents were located in Colorado. Defendants' Brief in Support of Second Motion for Partial Summary Judgment at 9–10.

Under the Restatement guidelines, the court once again finds that Wyoming law on punitive damages applies. Wyoming law on punitive damages has the most significant relationship to the accident and the parties. Unlike Colorado law, a policy underlying Wyoming law may be effectuated by applying its law on punitive damages. Further, the injury occurred in Wyoming. The court believes these factors outweigh the many contacts decedents obviously had with Colorado.

### Constitutionality of Punitive Damages

Punitive damages under certain circumstances can raise due process concerns. In a concurring opinion, Justices O'Connor and Scalia expressed such concerns about a Mississippi law "giv[ing] juries discretion to award any amount of punitive damages in any tort case in which a defendant acts with a certain mental state." *Bankers Life and Casualty Company v. Crenshaw*, — U.S. ——, 108 S.Ct. 1645, 1655, 100 L.Ed.2d 62 (1988). Those justices further noted that "[t]his grant of wholly standardless discretion to determine the severity of punishment appears inconsistent with due process." *Id.*, 108 S.Ct. at 1656. As the justices later noted, "[n]othing in Mississippi law warned appellant that by committing a tort that caused $20,000 of actual damages, it could expect to incur a $1.6 million punitive damage award." *Id.* See also *Aetna Life Insurance Company v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986); *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Seizing upon these concerns, defendants argue that punitive damages under Wyoming law are unconstitutional.

■ Contrary to Mississippi law, Wyoming law does contain standards. Punitive damage awards will not be upheld on appeal if they punish unjustly or excessively. *Campen*, 635 P.2d at 1123. In considering the amount of punitive damages, the jury must consider the nature of the tort, the amount of the actual damages, and the wealth of the defendant. *Id.* at 1127–28 (quoting *Sears v. Summit, Inc.*, 616 P.2d 765, 772 (Wyo.1980)). The court concludes that Wyoming's method of arriving at and reviewing punitive damages is constitutional.

### The Merit of Punitive Damages in this Case

The court will hear the evidence before deciding whether the jury will be instructed on punitive damages.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment be DENIED.